701 A.2d 516

COMMONWEALTH of Pennsylvania, Appellee,

v.

Salvador MORALES, a/k/a Simon Pirela, Appellant.

Supreme Court of Pennsylvania.

Submitted Nov. 8, 1995.

Decided Sept. 17, 1997.

Reargument Denied Nov. 13, 1997.

James D. Crawford, Joseph T. Lukens and Jeffrey W. Soderberg, Philadelphia, for S. Morales.

Catherine Marshall, Philadelphia and Robert A. Graci, Harrisburg, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

FLAHERTY, Chief Justice.[1]

This is a direct appeal from the order of the Court of Common Pleas of Philadelphia County denying appellant's second petition for post-conviction relief in appellant's homicide case where he received the death penalty.[2] For the reasons expressed herein, we remand for a new sentencing hearing.

In May, 1983, appellant, Salvador Morales, and his co-defendant, Heriberto Pirela, a/k/a Carlos Tirado,[3] were jointly tried before a jury for the death of Jorge Figueroa. On May 18, 1983, the jury convicted both men of first degree murder, criminal conspiracy and possession of an instrument of crime.[4] Following a separate penalty proceeding, the jury sentenced appellant to death.[5] On direct appeal, this Court affirmed the

1. This case was reassigned to this writer on April 10, 1996.

2. Under the PCRA, unlike its predecessor the Post–Conviction Hearing Act, 42 Pa.C.S. §§ 9541–9551, the denial of post-conviction relief in a death penalty case is directly reviewable by this Court pursuant to 42 Pa.C.S. § 9546(d).

3. Co-defendant Heriberto Pirela is appellant's brother.

4. The evidence at trial established that on August 29, 1982 at approximately 11:45 p.m., Eddie Colon led the victim to the basement of a house on North Orianna Street in Philadelphia where appellant, the co-defendant, and a friend of appellant were waiting. Appellant initially beat the victim because he believed that the victim was a snitch and that the victim owed him money for drugs. Appellant then took a knife and repeatedly stabbed the victim. When the victim attempted to escape, appellant's co-defendant grabbed the victims's hair and stabbed the victim in the back. After the victim's body was disposed of in an old church, appellant ordered everyone present at the house to clean up the blood. An autopsy showed that the victim was stabbed twelve (12) times in the back and eight (8) times in the chest. A more detailed account surrounding appellant's conviction is set forth in this Court's opinion affirming appellant's judgment of sentence of death on direct appeal. *See Commonwealth v. Morales,* 508 Pa. 51, 494 A.2d 367 (1985).

5. The jury found two aggravating circumstances and no mitigating circumstances. The aggravating circumstances found were that appellant had a significant history of felony convictions involving the threat or use of violence and that appellant was convicted of another offense for a which a sentence of life imprisonment or death was imposable. 42 Pa.C.S. § 9711(d)(9) and (10). In addition to the sentence of death,

convictions and judgment of sentence. *Commonwealth v. Morales,* 508 Pa. 51, 494 A.2d 367 (1985).

In 1987, appellant filed a petition under the Post–Conviction Hearing Act ("PCHA") alleging that his trial counsel was ineffective for failing to present mitigating evidence at his penalty hearing and for failing to raise that issue on direct appeal. The PCHA court denied this petition. The Superior Court affirmed the denial in a memorandum opinion [6] and this Court denied allocatur.[7]

On August 3, 1990, appellant filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. Because state claims were raised therein, the federal district court placed this petition, along with another habeas corpus petition filed by appellant, in civil suspense pending appellant's return to the state courts so that he could exhaust all of his claims in state court.

On November 15, 1994, petitioner filed his second petition for post-conviction relief, this time under the Post Conviction Relief Act ("PCRA").[8] On December 8, 1994, the PCRA court denied this second petition for collateral relief without conducting an evidentiary hearing because it believed that a decision could be rendered based on the existing record.[9] This appeal followed.[10]

appellant received consecutive terms of imprisonment of twelve and one-half to twenty-five years on the remaining convictions. Appellant's co-defendant was sentenced to life-imprisonment.

6. 394 Pa.Super. 613, 565 A.2d 820 (1989)(Table).

7. 526 Pa. 648, 585 A.2d 467 (1990) (Table).

8. 42 Pa.C.S. § 9541 et seq.

9. Under Rule 1507 of the Pennsylvania Rules of Criminal Procedure ("Disposition [of PCRA petition] Without Hearing"), a PCRA court may dispose of post-conviction collateral petitions without a hearing if it is satisfied after reviewing the materials submitted that no genuine issues of material fact exist and that petitioner is not entitled to post-conviction relief.

10. Section 9546(d) of the PCRA, 42 Pa.C.S. § 9546(d), required appellant to appeal the denial of his PCRA petition directly to this Court since it involves the imposition of the death penalty. No direct appeal to this Court was filed from the denial of his first PCHA petition since

 This Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error. *Commonwealth v. Travaglia,* 541 Pa. 108, 117 n. 4, 661 A.2d 352, 356 n. 4 (1995). In order to be eligible for relief under the PCRA, an appellant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S. § 9543(a)(2) [11] and that the issues he raises have not been previously litigated. *Id.* 661 A.2d at 356. An issue will be deemed previously litigated when "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2). At the outset, we note that the first two claims raised by appellant which are discussed *infra* have been previously litigated. Thus, appellant

the PCHA did not provide for direct appeal in cases involving the death penalty.

11. Section 9543(a)(2) provides that appellant is entitled to PCRA relief if his judgment or sentence arose from the following:

(i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.

(iv) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) A violation of the provisions of the Constitution, law or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543(a)(2).

will not be entitled to post-conviction relief on those two claims.

With respect to all of appellant's claims which have not been previously litigated, appellant also must normally demonstrate that the claims have not been waived. 42 Pa.C.S. § 9543(a)(3).[12] However, waiver will be excused under the PCRA if appellant can meet the conditions of 42 Pa.C.S. § 9543(a)(3)(ii) or (iii) or by making a showing of ineffective assistance of counsel. *Commonwealth v. Christy*, 540 Pa. 192, 201–202, 656 A.2d 877, 881, *cert. denied*, —— U.S. ——, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995). Here, appellant could have raised all of his non-previously litigated claims on either direct appeal or in his first PCHA petition. Appellant, however, avoided waiving these claims in this PCRA petition by asserting that all of his prior counsel were ineffective for failing to previously raise them.[13]

In reviewing appellant's claims which have not been previously litigated, we must be mindful that this is his second collateral attack on his convictions and judgment of sentence. Thus, appellant's request for relief "will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred." *Commonwealth v. Lawson*, 519 Pa. 504, 513, 549 A.2d 107, 112 (1988). An appellant makes such a *prima facie* showing only if he demonstrates that either the proceedings which resulted in his

**12.** Section 9543(a)(3) provides:
[T]hat the allegation of error has not been previously litigated and one of the following applies: (i) The allegation of error has not been waived. (ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual. (iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.
42 Pa.C.S. § 9543(a)(3).

**13.** A finding that appellant waived a claim would not prove fatal since this Court's practice has been to address all waived issues which have been raised in PCRA death penalty petitions. *Travaglia*, 661 A.2d at 356 n. 6; *Commonwealth v. Banks*, 540 Pa. 143, 656 A.2d 467, 470 n. 6 (1995).

conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes for which he was charged. *Commonwealth v. Szuchon*, 534 Pa. 483, 487, 633 A.2d 1098, 1100 (1993). It is with the above standards in mind that we will examine appellant's claims.

## PREVIOUSLY LITIGATED CLAIMS

### 1. *FAILURE OF TRIAL COURT TO GRANT CONTINU-ANCE*

Appellant contends that he is entitled to a new sentencing hearing because the trial court erred in denying his motion to continue his penalty hearing so that he could obtain the assistance of the court appointed psychiatrist, Dr. Grosso, in preparing, evaluating and presenting his case. In appellant's direct appeal from his judgment of the sentence of death, this Court held that appellant's request for a continuance was properly denied since appellant failed to present on appeal reasons why Dr. Grosso's testimony would have been beneficial. *Morales*, 508 Pa. at 72, 494 A.2d at 378. Thus, this claim warrants no further review since it has been previously litigated. *See Christy, supra*, 540 Pa. at 202, 656 A.2d at 881 (post-conviction relief of claims previously litigated on appeal not available by alleging new theories of relief). Moreover, even if this claim was not previously litigated, it would still fail since appellant merely speculates that Dr. Grosso would have testified favorably on his behalf. Appellant offers no evidence or affidavit detailing the basis for such speculation. Absent such proof, appellant has failed to show that he suffered a miscarriage of justice. *See Commonwealth v. Birdsong*, 538 Pa. 587, 602–03, 650 A.2d 26, 34 (1994) (no error in denying continuance at penalty hearing since appellant failed to present any evidence as to nature of psychiatrist's testimony). Accordingly, no post-conviction relief is warranted.

Appellant also asserts that a continuance should have been granted since he was not competent to waive his right to present mitigating evidence, and that in any event, his waiver was not knowing, intelligent and voluntary. This Court has

already reviewed the substance of this claim and held that the denial of appellant's continuance request was proper since appellant made a "knowing, intelligent and voluntary waiver, on the record, of his right to present any evidence at the sentencing hearing, generally, and of the psychiatrist's testimony/evidence, specifically." *Morales*, 508 Pa. at 72, 494 A.2d at 378.[14] Thus, this claim was previously litigated. Accordingly, no post-conviction relief is warranted.

## 2. FAILURE TO OBJECT TO JURY INSTRUCTIONS

Appellant also claims that trial counsel was ineffective for failing to object to jury instructions given by the trial court during the penalty phase of the trial. Appellant concedes, as he must, that the issues surrounding the propriety of the trial court's jury instructions were previously litigated when this Court held, on appellant's direct appeal from his judgment of sentence of death, that the jury instructions given at the penalty phase of trial were proper. *See Morales*, 508 Pa. at 70–71, 494 A.2d at 377–378. Accordingly, no relief is warranted. *See Commonwealth v. Christy*, 540 Pa. at 202, 656 A.2d at 881 (1995) (post-conviction relief of claims previously litigated

---

**14.** This holding was clearly supported by the following colloquy of appellant by the trial court as to his decision not to testify or present mitigating evidence (all answers by appellant were through a court appointed interpreter):

Q: Ask him if he realized the seriousness of this proceeding at this time?
A: I understand. I understand.
Q: Does he understand that the jury can either bring in life imprisonment or death?
A: Let them come.
Q: Is he doing this of his own free will?
A: Yes. Of course, yes.
Q: Is there anything he wants to ask me?
A: No.
Q: Ask him if he wants the psychiatrist to testify?
A. That, neither. Tell him no.
Q: Does he realize that later he is not going to be able to complain if the jury comes in with a death penalty?
A. Tell them that they can come with it. How many times do I have to say it? ... Let them come with the electric chair.
(N.T. 14.15–14.17).

on appeal not available by alleging ineffective assistance of counsel).

## INEFFECTIVE ASSISTANCE OF COUNSEL

As previously discussed herein, appellant avoided having all of his other claims from being deemed as waived by asserting that all of his prior counsel provided ineffective assistance in failing to raise those claims. We will examine each of appellant's non-previously litigated claims *ad seriatim*.

### 1. DISCLOSURE VIOLATIONS

#### (a) Brady Violation—Psychiatric Report

Appellant contends that he is entitled to a new sentencing hearing because all of his previous counsel provided ineffective assistance by failing to raise a *Brady*[15] claim concerning the Commonwealth's failure to turn over to appellant a copy of a psychiatric report regarding him prepared by another psychiatrist in an unrelated criminal matter even though the Commonwealth had the report approximately one month before the trial in the instant matter. Appellant argues that this report would have entitled him to the continuance he sought of his sentencing hearing since it would have enabled him to demonstrate to the trial court the type of evidence he believes that Dr. Grosso would have offered.[16]

 Under *Brady*, the prosecution must turn over evidence within its possession that is exculpatory to either the guilt or the punishment of the defendant. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97; *Christy*, 540 Pa. at 213, n. 17, 656 A.2d at 887, n. 17. Only evidence which shows that appellant: was under extreme mental or emotional disturbance at the

15. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

16. Appellant provides no explanation as to why he did not subpoena the author of the report for his penalty phase in this matter instead of seeking a continuance to have another psychiatrist perform a separate exam which he speculates would have been equally helpful. However, as discussed *infra*, the report he alleges should have been disclosed fails to provide exculpatory evidence, which is presumably why he did not seek the assistance of the other psychiatrist.

time of the offense, 42 Pa.C.S. § 9711(e)(2); or was substantially impaired from appreciating the criminality of his conduct, 42 Pa.C.S. § 9711(e)(3); or, which reflected on his character and record, 42 Pa.C.S. § 9711(e)(8), would qualify as evidence under *Brady* which could mitigate appellant's sentence of death. Here, the evidence allegedly not disclosed by the Commonwealth would have only served to prejudice appellant rather than aid him in mitigating his sentence.[17] Under these circumstances, we find that no *Brady* violation occurred that would require a new sentencing hearing. *See Christy, supra.* (No *Brady* violation for failing to disclose psychiatric testimony that did not demonstrate exculpatory evidence with respect to defendant's guilt and sentencing). Accordingly, appellant's previous counsel cannot be ineffective for raising a meritless claim. *See Travaglia, supra,* 541 Pa. at 140, 661 A.2d at 368 (counsel cannot be deemed ineffective if underlying claim devoid of merit).[18]

### (b) *Brady Violation—Colon Plea Agreement*

Appellant next claims he is entitled to a new trial because all of his prior counsel provided ineffective assistance by failing to raise a *Brady* claim concerning the Commonwealth's

17. The psychiatric report noted that while appellant was hostile during the interview, his thoughts progressed in a normal associative manner. The report also noted that appellant showed no evidence of perceptual distortions or of suicidal intent. The report further noted that while appellant operated "in the below normal range of intellectual functioning," he "did not appear to require any diagnosis of mental retardation of even the borderline category." The report concluded that:

> This individual shows no evidence of a psychosis or primary affective disorder ... Based on my findings in the interview, it is my opinion that this Defendant does not manifest a major mental illness which would be a factor in the disposition of his case.

18. Appellant alternatively argues that he is entitled to a new sentencing hearing because the trial court did not disclose the existence and contents of the psychiatric report. This argument fails since, as discussed above, the report did not contain exculpatory evidence as to mitigation of appellant's punishment. *See Commonwealth v. Santiago,* 405 Pa.Super. 56, 93, 591 A.2d 1095, 1114 (*en banc*), *appeal denied,* 529 Pa. 633, 600 A.2d 953 (1991) (trial court's duty to disclose only arises where it is in exclusive possession of exculpatory evidence and nondisclosure results in a miscarriage of justice).

alleged failure to fully disclose the nature of the agreement it reached with Eddie Colon, one of the witnesses at the guilt phase of appellant's trial. Appellant argues that he believes that the agreement also included a provision by which the Commonwealth agreed not to prosecute Colon in connection with this murder. Thus, appellant contends that the failure to fully disclose the Colon agreement violated *Brady* since it deprived him of crucial impeachment evidence.

In order to be entitled to a new trial for failure to disclose evidence affecting a witness' credibility, appellant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence. *Commonwealth v. Moose,* 529 Pa. 218, 232, 602 A.2d 1265, 1272 (1992). Moreover, since this is appellant's second collateral petition, he must also demonstrate that this nondisclosure resulted in a miscarriage of justice. *See Lawson, supra.* Here, the evidence shows that Colon denied on direct examination that his agreement with the Commonwealth included this alleged provision and that the Commonwealth has consistently represented that, besides not entering into such an agreement, it also has no material in its files pertaining to such an agreement. *See Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811, 822 (1985), *cert. denied* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986) (Commonwealth does not violate disclosure requirements of *Brady* by failing to disclose evidence that it does not have and of which it is not aware). Under these circumstances, we decline to find that a *Brady* violation occurred since appellant offers nothing besides his mere conjecture that such an arrangement existed.[19] Such speculation does not support a claim of ineffective assistance that resulted in appellant suffering a miscarriage of justice.

**19.** Appellant admits that the Commonwealth orally informed him before trial that it struck an agreement with Eddie Colon whereby Colon would testify against appellant in exchange for the Commonwealth only charging Colon with third degree murder rather than first degree murder in connection with the August 15, 1982 murder of Ignacio Slaffman. Appellant also admits that he used this agreement to attack Colon's credibility during cross-examination and in closing arguments.

## 2. *SENTENCING ERROR—AGGRAVATING CIRCUM-STANCES*

 Appellant next claims that his sentence of death should be vacated and a life sentence should be imposed because all of his prior counsel provided ineffective assistance by failing to raise claims that there was insufficient evidence to support the aggravating circumstance that he had a significant history of felony convictions involving the use or threat of violence. 42 Pa.C.S. § 9711(d)(9). The Commonwealth does not dispute that insufficient evidence existed to support this aggravating circumstance since appellant only had one conviction involving the use or threat of violence at the time of his sentencing hearing. Nevertheless, appellant's claim is devoid of merit because as long as there exists one aggravating circumstance and no mitigating circumstances, as is the case here,[20] the death penalty is required as a matter of law. 42 Pa.C.S. § 9711(c)(1)(iv). Accordingly, post-conviction relief is not warranted.

## 3. *FAIRNESS OF TRIAL*

### (a) *Judicial Bias*

Appellant contends that he is entitled to a new trial because all of his prior counsel were ineffective for failing to claim that

---

**20.** Appellant does not challenge the other aggravating circumstance found, that at the time he was sentenced, he was convicted of another crime for which a sentence of life imprisonment was imposable. 42 Pa.C.S. § 9711(d)(10) since he was convicted on April 7, 1983 of first degree murder for the death of Julio Cruz. Moreover, appellant, in raising this claim, ignores the following language of this Court when it affirmed the judgement of sentence of death on direct appeal:

Appellant does not challenge the sufficiency of the evidence to sustain the aggravating circumstance set forth in subsection (d)(9), namely that "defendant has a significant history of felony convictions involving ... violence ...," nor does he suggest that one prior homicide conviction is insufficient to constitute a "significant history" of violent felony convictions. In any event, "the presence of and correctness of, a jury's finding of a second aggravating circumstance is not relevant in a case such as this where there has been found no mitigating circumstance, since one aggravating circumstance alone requires a verdict of death."

*Morales*, 508 Pa. at 73 n. 11, 494 A.2d at 379 n. 11, *quoting, Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730, 738 n. 3 (1984).

his conviction and sentence were the result of judicial bias. In his attempt to obtain a new trial, appellant alleges that the following situations demonstrate judicial bias sufficient to warrant a reversal of his conviction and sentence: (1) the death penalty in an undisclosed number of capital cases over which the trial court presided was reversed by this Court; (2) the trial court made several rulings during *voir dire* that were adverse to him; and, (3) the trial court refused to grant him a continuance to secure the assistance of Dr. Grosso. However, appellant utterly fails to demonstrate with any particularity how any of his boilerplate claims warrant relief at this juncture.

With respect to the first proffered example, appellant fails to identify how any of the trial judge's identified reversed capital sentences compared to the cases in which the sentence of death was affirmed [21] would have any bearing on this case.[22] With respect to the second example, appellant fails to identify even a single adverse ruling during *voir dire* to support his claim of judicial bias. With respect to his third example, as discussed above, appellant clearly failed to provide any evidence that would warrant the trial court's grant of a continuance. We will not find judicial bias sufficient to reverse where appellant's claim are unsubstantiated and undeveloped. *See Travaglia, supra,* 541 Pa. at 138–39, 661 A.2d at 367 (party alleging judicial bias must prove that trial judge deprived party from receiving a fair trial). Hence, appellant's collateral post-conviction claim alleging ineffective assistance of counsel for failing to request a new trial and penalty hearing is without merit.

**21.** Appellant's baseless and undeveloped attacks on the trial court provides no basis for relief. The Honorable Albert F. Sabo has dutifully served as a judge in the Philadelphia Court of Common Pleas since he was duly elected in 1973 and who is one of the few judges to continually preside over homicide trials in Philadelphia.

**22.** In making this claim, appellant ignores the fact that in this case, the decision to convict and the decision of whether aggravating or mitigating circumstances existed so as to raise the issue of whether the death penalty should be imposed rested on the shoulders of the jury. The sentencing court, in accordance with the law, merely imposed the sentence of death upon appellant based on the jury's verdict.

(b) *Procedural Protections*

 Appellant also claims in a boilerplate fashion that his conviction and sentence must be reversed because all prior counsel were ineffective for failing to claim that he was denied the heightened procedural safeguards required in capital cases because his trial was infected with arbitrariness, bias and irrationality. Appellant's brief, however, fails to identify what portions of the record support this ambiguous claim or exactly why he is legally, or otherwise, entitled to relief.[23] Thus, appellant fails to meet his burden under *Lawson* of making a *prima facie* showing that this error caused him to suffer a miscarriage of justice. Accordingly, this claim for post-conviction relief based on ineffectiveness must fail since counsel cannot be ineffective for failing to raise a meritless claim.

(c) *Exclusion of Jurors*

Appellant next contends that his death sentence should be vacated because all prior counsel were ineffective for failing to allege that two prospective jurors were improperly excluded from the jury panel on the basis of their beliefs as to capital punishment. Specifically, appellant argues that two jurors were improperly dismissed for cause without having expressed sufficient reservations about their ability to apply the law governing imposition of the death penalty.

 The proper standard for determining when a prospective juror may be excluded for cause is whether his or her views on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); *See also Commonwealth v. Williams*, 514 Pa. 62, 68–70, 522 A.2d 1058, 1061–62 (1987). A juror's bias need not be proven with unmistakable clarity. *Witt*, 469 U.S. at 425, 105 S.Ct. at 852–53. Moreover, since this is appellant's second collateral peti-

23. In a footnote, appellant alleges that he was denied a procedural protection because the method of assigning judges to capital cases used in the Philadelphia Court of Common Pleas in 1983 was unconstitutional. However, even this "claim" is undeveloped.

tion, the PCRA requires that appellant demonstrate that this error resulted in a miscarriage of justice. *See Lawson, supra.*

During the following colloquy, the first juror challenged by appellant indicated that he was uncertain whether he could impose the death penalty:

Q: Is there anything about the nature of the crimes charged against these defendants, that is, murder, which would somehow prevent you from reaching a verdict, if you were selected to serve in this case?

A: Well, the death penalty—

Q: Would you tell me about that, sir?

A: Well, I'm not certain that I could judge someone fair enough to give them the death penalty ...

Q: But you have some doubt about your ability to impose the death penalty; is that correct?

A: Correct.

The uncertainty expressed by this juror was sufficient for the trial court to excuse this juror for cause. *See Commonwealth v. Hardcastle*, 519 Pa. 236, 256–57, 546 A.2d 1101, 1111 (1988), *cert. denied* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990) (juror's answer that he did not know whether he could impose death penalty provided trial court with ample basis to excuse juror for cause). Thus, this claim for post-conviction relief must fail since appellant does not establish that the exclusion of this juror resulted in him suffering a miscarriage of justice.

The second juror that appellant complains was improperly dismissed expressed the following during *voir dire:*

Q: Would you be able to accept [the reasonable doubt] standard and evaluate the case based on that standard, or would you require the Commonwealth to prove guilt beyond all doubt?

A: I think that would depend on what type of sentence you were looking for. In other words, what I am saying is, if you want me to bring a guilty verdict on somebody, okay, and we are talking about life, then I've got to be really real

sure that they are really real guilty. You have got to prove it to me.

Q: Are you saying that in a criminal case there should be a different standard, one for a capital case where the death penalty is involved, and another for a case where there is no death penalty?

A: Yes, because if you are going to take somebody's life, you got to be sure, as far as I'm concerned.

Q: So you would hold the Commonwealth to a higher standard?

A: Yes.

Q: In a capital case?

A: Yes.

Q: That's obviously something you feel very strongly about?

A: Yes.

This colloquy shows that this prospective juror had a preconceived and improper belief about the Commonwealth's burden of proof in a capital case. *Commonwealth v. Holland*, 518 Pa. 405, 416–17, 543 A.2d 1068, 1073–74 (1988) (preconceived beliefs or attitudes regarding imposition of death penalty provides proper grounds to dismiss prospective jurors for cause). Accordingly, no relief is warranted since appellant has failed to establish that he suffered a miscarriage of justice.

## 4. *FAILURE TO INTERVIEW OR CALL WITNESSES*

██ Appellant next alleges that he is entitled to a new sentencing hearing because all prior counsel were ineffective for not raising trial counsel's ineffectiveness for failing to interview appellant about his personal background. Appellant claims that such an interview would have provided trial counsel with information about the various difficulties he faced in his lifetime and his drug usage, all of which he believes would have been relevant under 42 Pa.C.S. § 9711(e)(8), other evidence in mitigation. In order to make a claim of ineffectiveness for failure to interview and/or present a witness, appellant must prove: (1) the existence and availability of the

witness; (2) counsel's awareness of, or duty to know of the witness; (3) the witness' willingness and ability to cooperate and appear on behalf of appellant; and (4) the necessity of the proposed testimony in order to avoid prejudice. *Commonwealth v. Stanley*, 534 Pa. 297, 300, 632 A.2d 871, 872 (1993).

Appellant's claim that trial counsel failed to interview him about his background rings hollow when one examines the transcript of his sentencing hearing. During trial counsel's closing argument, trial counsel attempted to present the following information about appellant:

> My client, Simon Pirela has refused me and His Honor, in your absence, to take the stand and answer my questions for your benefit as to where he came from, how old he is, what his childhood was like, who his parents were, how he grew up ... He would not take the stand. He's afraid to take the stand even though—
>
> PROSECUTOR: Objection.
>
> THE COURT: Sustained. You will disregard the last comment.
>
> TRIAL COUNSEL: He will not take the stand. He has told me he was born in a small rural place—
>
> PROSECUTOR: Objection.
>
> THE COURT: Sustain the objection. The jury can only take what they hear from the witness stand.

(N.T. 14.38–39). This exchange shows that appellant's trial counsel did discuss appellant's background with him and had hoped to present this evidence at the penalty phase. As discussed above, appellant refused to take the stand and present this or any other mitigating evidence. Thus, appellant's trial counsel did not provide ineffective assistance. *See Commonwealth v. Cross*, 535 Pa. 38, 44–45, 634 A.2d 173, 176 (1993), *cert. denied*, 513 U.S. 833, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994) (counsel cannot be ineffective for failing to introduce evidence which client does not want counsel to present). Moreover, if this Court were to allow such an ineffectiveness claim to succeed after appellant made a knowing, intelligent and voluntary waiver of his right to present mitigating evi-

dence, it would have the unwanted and absurd effect of allowing appellant and other defendants to build ineffective assistance claims into their case in order to guarantee themselves a new sentencing hearing should they receive the death penalty. Accordingly, this claim for post-conviction relief must fail.

██ Appellant also argues that he is entitled to a new sentencing hearing because all prior counsel were ineffective for not raising trial counsel's ineffectiveness for failing to interview or call his relatives as witnesses about his background and his good character. The evidence appellant's relatives would have offered would have been essentially the same evidence that appellant claims that trial counsel should have elicited from him. Since the record reveals that trial counsel interviewed appellant regarding his background and that notwithstanding such efforts, appellant prevented trial counsel from presenting such evidence, trial counsel cannot be deemed constitutionally ineffective for failing to pursue cumulative evidence of appellant's background. *See Cross,* 535 Pa. at 46, 634 A.2d at 177 (counsel cannot be deemed ineffective for failing to contact defendant's siblings when they would have added only cumulative evidence of defendant's childhood and background).

██ As to trial counsel's alleged ineffectiveness for not using appellant's relatives to present character evidence, such a tactic would have potentially subjected the relatives and other people to cross-examination by the Commonwealth of other bad acts by appellant.[24] Trial counsel cannot be deemed ineffective for failing to present character witnesses who could have been cross-examined about appellant's prior bad acts. *See Commonwealth v. Peterkin,* 538 Pa. 455, 466–67, 649 A.2d 121, 124–25, *cert. denied,* 515 U.S. 1137, 115 S.Ct. 2569, 132

---

24. As noted by the PCRA court, appellant had a lengthy record of criminality and a reputation for violence. Neither party has explained at this juncture what these prior bad acts were. Appellant, however, does not dispute either the PCRA court's statement or the fact that he has a history of prior bad acts.

L.Ed.2d 821 (1995). Accordingly, this claim for post-conviction relief must fail.

■ Appellant further argues that he is entitled to a new sentencing hearing because all prior counsel were ineffective for failing to raise trial counsel's ineffectiveness for failing to obtain the testimony of Dr. Grosso for appellant's penalty phase hearing.[25] Appellant's claim fails since he does not make a factual showing as to how Dr. Grosso's testimony would have been helpful. Accordingly, no relief is warranted.

## 5. *FAILURE TO ADVISE*

■ Appellant next alleges that he is entitled to a new sentencing hearing because all prior counsel were ineffective for failing to allege trial counsel's ineffectiveness for failing to inform appellant that if he testified at his sentencing hearing that he *could not* be cross-examined about his prior bad acts, including his criminal history. This argument is patently baseless as it is well established that if appellant had taken the stand and placed his character at issue, the Commonwealth would have been entitled to pursue facts relevant to the subject of appellant's prior bad acts. *See Peterkin,* 538 Pa. at 466–67, 649 A.2d at 124–25 (counsel not ineffective for failing to present character evidence where defendant could be confronted with prior bad acts). Accordingly, this claim for collateral post-conviction relief must fail.

## 6. *FAILURE TO PRESENT MITIGATING CIRCUMSTANCES*

■ Appellant next alleges that he is entitled to a new sentencing hearing because all prior counsel were ineffective for failing to allege trial counsel's ineffectiveness for not

---

**25.** Appellant speculates that Dr. Grosso's testimony would have been helpful since he testified at his brother's sentencing hearing in this case on appellant's brother's behalf about the psychological effects that his brother's background and drug usage had on his brother's intellectual capacity. Appellant's brother was eventually sentenced to life imprisonment in connection with this murder. However, we decline appellant's invitation to grant him a new trial or sentencing hearing based on sheer speculation. To think one is a king does not make it so.

presenting mitigating evidence at appellant's sentencing hearing that appellant was a young man at the time of his murder (appellant was 22 years old at the time of the crime).[26] Our review of the record, however, reveals that appellant's age *was* admitted during the penalty phase of his trial.[27] Accordingly, this meritless claim must fail. *See Travaglia, supra,* 541 Pa. at 140, 661 A.2d at 368 (counsel cannot be deemed ineffective if underlying claim devoid of merit).[28]

## 7. *FAILURE TO OBJECT TO PROSECUTORIAL MISCONDUCT*

▓▓▓▓▓ Appellant also alleges that he is entitled to a new trial because all prior counsel were ineffective for not raising trial counsel's ineffectiveness for failing to object to certain of the prosecutor's statements during closing arguments at trial and at the penalty hearing. Generally, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. D'Ambro,* 500 Pa. 303, 309–10, 456 A.2d 140, 144 (1983). Prosecutorial

**26.** The youth or advanced age of the defendant at the time of the crime is one mitigating circumstance allowed by statute. 42 Pa.C.S. § 9711(e)(4).

**27.** Two Commonwealth witnesses at appellant's penalty hearing testified that appellant was born on October 8, 1959 showing that appellant was twenty-two (22) at the time of the murder. Moreover, the sentencing form given to the jury during its deliberations included all possible mitigating circumstances that the jury could find, including the youthfulness of appellant. Thus, the jury was presented with evidence that would have allowed it to consider appellant's age as a mitigating circumstance. Moreover, this Court has already found that appellant made a knowing, intelligent and voluntary waiver of his right to present mitigating evidence. Since appellant waived his right to present this evidence, appellant cannot now assert that trial counsel was ineffective for failing to overrule appellant's stated desire to forego the presentation of mitigating evidence. *See Commonwealth v. Tedford,* 523 Pa. 305, 339–40, 567 A.2d 610, 626–27 (1989) (trial court not required to compel evidence of mitigating circumstances when defendant waives right to pursue that evidence).

**28.** We remind present counsel that he has an obligation under Rule 3.1 of the Rules of Professional Conduct not to raise frivolous claims.

misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair. *Commonwealth v. Marshall,* 534 Pa. 488, 509, 633 A.2d 1100, 1110 (1993). Moreover, in order to evaluate whether the comments were improper, we must look at the context in which they were made. *Commonwealth v. Carpenter,* 533 Pa. 40, 48–49, 617 A.2d 1263, 1267 (1992).

■■■ The first statement appellant contends that trial counsel should have objected to is the prosecutor's reference to "barbarism" during the following excerpt of his closing argument at trial:

> [L]et me say at the outset that the members of this jury will decide this case for all time and it is your responsibility to determine what happened here and to render a fair and impartial verdict. It is your responsibility, because the way this system is organized, you and you alone decide whether we will be a law abiding society or whether we will be reduced to barbarism. The jury is selected to evaluate the evidence. That's all I'm asking you to do. Faithfully adhere to the oath and to do what you have been summoned here to do even if it is unpleasant.

(N.T. 12.93). A complete examination of the context in which the challenged remark was made fails to convince us that the remark had the effect of forming in the minds of the jury a fixed bias or hostility toward appellant so that it could not objectively render a true verdict. *See Commonwealth v. Ragan,* 538 Pa. 2, 36, 645 A.2d 811, 828 (1994) (prosecutor's comment that the failure to convict would be a "failure of justice" was not improper). Such oratorical flair does not warrant a new trial. Accordingly, appellant's claim for postconviction relief must fail since trial counsel cannot be deemed ineffective for failing to raise a meritless claim. *See Travaglia, supra,* 541 Pa. at 140, 661 A.2d at 368 (counsel cannot be deemed ineffective if underlying claim devoid of merit).

■■■ Finally, appellant contends that he is entitled to a new sentencing hearing since trial counsel was ineffective for

failing to object to the following remarks during the prosecutor's closing at the penalty phase:

> I urge you on the basis of this evidence, not because I'm a vindictive person or not because you're a vindictive person, but because it is the responsibility of citizenship to find aggravation, to find that the killing of a man on one occasion makes the second killing no accident but a deliberate, premeditated and willful act, one for which you are unwilling to forgive, one for which you are willing to say for one time, "I'm going to follow the law and do what the law says." We all know as members of the community that in a casual conversation there isn't a week that passes that someone on occasion complains about the liberal judges allowing people to go free or do little time, for instance, and you believe the judge. Well, you are the judges in this instance. There is nobody to blame for the kind of sentence that is meted out here, because you have that responsibility and you as citizens have had that responsibility since June of 1978.

(N.T. 14.49–50). During the penalty hearing, the prosecutor may employ oratorical flair in arguing for a sentence of death and he is accorded greater latitude in presenting argument since the presumption of innocence is no longer applicable. *Travaglia, supra,* 541 Pa. at 134, 661 A.2d at 365.

Here, however, the prosecutor exceeded his authority. The implication is that defendant should receive the death penalty because otherwise he may join the ranks of defendants who have been wrongly released from jail by liberal judges.

The death penalty statute provides: "Evidence of aggravating circumstances shall be limited to those circumstances specified in subsection (d)." 42 Pa.C.S. § 9711(a)(2). Subsection (d) contains no mention of defendants being released on parole.

Analogous problems have arisen recently in *Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621 (1995) and *Commonwealth v. Chambers,* 528 Pa. 558, 599 A.2d 630 (1991). In *Simmons* the Commonwealth made oblique reference to the

426

possibility that the defendant may be paroled if he were given a life sentence, and in *Chambers* the prosecutor made reference to the Bible in arguing for the death penalty. In *Simmons* we allowed the death sentence to stand, but observed that if the prosecutor had made reference to what the defendant might do if released from jail, the remark would be reversible error. In *Chambers* we held that any reliance by the prosecution upon religious writings to support the imposition of the death penalty is reversible error. In both cases, the problem was that the prosecutor made reference to considerations outside the death penalty statute to argue for imposition of the death penalty.

 Recognizing that no defendant is entitled to a perfect trial, but all defendants are entitled to a fair trial, our inquiry when considering prosecutorial closing arguments must be whether the remark in question jeopardized the fairness to which the defendant is entitled. Here, the remarks crossed the line. The prosecutor invited the jury to sentence this defendant to death in order to compensate for the alleged evils perpetrated by stereotypical liberal judges who routinely allow criminals to go free. The implicit argument is that if the jury does not take control of the case by imposing the death penalty, the liberal judges will intervene and somehow release the defendant. A second implicit argument is that imposing the death penalty in this case is a way to set the balance straight by compensating for the harm that has been done by the stereotypical liberal judges. Clearly such injustices, be they real or imagined, have nothing to do with this case, and the linking of a death sentence in this case with a perceived failing of the criminal justice system, dehors the record, was calculated to inflame the jury and might well have done so, thus constituting reversible error.

## *CONCLUSION*

Because of the improper closing argument, the order of the Court of Common Pleas of Philadelphia County denying appel-

lant's second PCRA petition is reversed and the case is remanded for a new sentencing hearing.

CASTILLE, J., files a concurring and dissenting opinion in which NEWMAN, J., joins.

CASTILLE, Justice, concurring and dissenting.

I concur with the majority opinion in its disposition of all issues raised in this appeal from the trial court's denial of appellant's second petition for post-conviction relief in appellant's homicide case except for that portion of the opinion which remands the matter to the trial court for a new sentencing hearing because of prosecutorial misconduct during the prosecutor's closing at the penalty phase of trial. Because I do not believe that the prosecutor's remarks were improper when viewed in the context in which they were made or that the comments rose to a level which were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, I must dissent from the majority's remand to the trial court for a new sentencing hearing.

As noted by the majority, appellant contends that he is entitled to a new sentencing hearing since trial counsel was ineffective for failing to object to the following remarks during the prosecutor's closing at the penalty phase:

I urge you on the basis of this evidence, not because I'm a vindictive person or not because you're a vindictive person, but because it is the responsibility of citizenship to find aggravation, to find that the killing of a man on one occasion makes the second killing no accident but a deliberate, premeditated and willful act, one for which you are unwilling to forgive, one for which you are willing to say for one time, "I'm going to follow the law and do what the law says." *We all know as members of the community that in a casual conversation there isn't a week that passes that someone on occasion complains about the liberal judges allowing people to go free or do little time, for instance, and you believe the judge.* Well, you are the judges in this instance. There is nobody to blame for the kind of sentence

that is meted out here, because you have that responsibility and you as citizens have had that responsibility since June of 1978.

(N.T. 14.49–50) (emphasis added). Generally, comments by a prosecutor during closing argument do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury by forming in their minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence properly. *Commonwealth v. LaCava*, 542 Pa. 160, 192, 666 A.2d 221, 236–37 (1995). During the penalty hearing, the prosecutor may employ oratorical flair in arguing for a sentence of death and he is accorded greater latitude in presenting argument since the presumption of innocence is no longer applicable. *Commonwealth v. Travaglia*, 541 Pa. 108, 134, 661 A.2d 352, 365 (1995).

The majority holds that the prosecutor's reference to "liberal judges" crossed the line of acceptable oratorical flair by inviting the jury to sentence appellant to death in order to compensate for the evils perpetrated by liberal judges in allowing criminals to go free and to set the balance straight by compensating for the harm done by liberal judges. If the prosecutor's reference to liberal judges was viewed in a vacuum, I may agree with the majority's holding on this issue. However, when evaluating whether a prosecutor's comments were improper, we must look at the context in which they were made. *Commonwealth v. Carpenter*, 533 Pa. 40, 48–49, 617 A.2d 1263, 1267 (1992).

Here, a view of the entire context in which the prosecutor made the reference shows that he was reminding the jury that they alone were the decision-maker who had the serious task of deciding whether to impose the death penalty. Also, the prosecutor emphasized that it was the jury's duty to exercise that power in accordance with the law. The prosecutor's comment about "liberal judges" does not alter the message being conveyed by the prosecutor that the jury must follow the law when rendering its decision on appellant's sentence. Moreover, a review of relevant case law demonstrates that this Court has held what I consider were far more impassioned

remarks in encouraging a jury to impose the sentence of death to constitute appropriate oratorical flair during closing remarks in the penalty phase of a capital case. *See Travaglia*, 541 Pa. at 136–37, 661 A.2d at 366 (prosecutor did not exceed bounds of reasonable advocacy during closing argument in penalty phase of capital case by suggesting that death penalty was only way to protect society); *Commonwealth v. Jones*, 530 Pa. 591, 622, 610 A.2d 931, 946 (1992) (no claim for prosecutorial misconduct lies where prosecutor asks rhetorical question to jury "will you get soft in the heart" and "I mean are we into this new morality now or are we into I'm going to make you feel sorry for doing what you got to do"). Therefore, I do not believe that the prosecutor's reference to "liberal judges" had the effect of forming in the minds of the jury a fixed hostility or bias toward appellant.

I also believe that appellant's case does not present a situation where a remand for a new sentencing hearing is warranted because it is well-settled law that attorney's statements or questions during a trial are not evidence. *LaCava*, 542 Pa. at 181–82, 666 A.2d at 231. The trial court instructed the jury in its opening instructions at the first day of trial and its closing instructions of the guilt phase of trial that statements of the attorneys are not evidence. Juries are presumed to follow the trial court's instructions and appellant presents no evidence which would lead me to conclude that the jury did not follow this charge during the penalty phase of appellant's trial. *Commonwealth v. Baker*, 531 Pa. 541, 559, 614 A.2d 663, 672 (1992) (law presumes that juries follow the trial court's instructions as to the applicable law). Also, as the majority notes in footnote 19 of its opinion, appellant has never challenged that there was overwhelming evidence of at least one of the two aggravating circumstances found; that at the time appellant was sentenced, he was convicted of another crime for which a sentence of life imprisonment was imposable. 42 Pa.C.S. § 9711(d)(10). Since there was overwhelming evidence of this aggravating circumstance, and no mitigating circumstances found by the jury, the jury was required to

impose the death penalty as a matter of law. 42 Pa.C.S. § 9711(c)(1)(iv).

When all of the above considerations are factored into the equation and since this is appellant's second petition for post-conviction relief, I cannot find that the prosecutor's reference to liberal judges resulted in a sentence so unfair that a miscarriage of justice occurred which no civilized society could tolerate. *See Commonwealth v. Szuchon*, 534 Pa. 483, 487, 633 A.2d 1098, 1100 (1993) (second collateral attack requires showing of miscarriage of justice which no society could tolerate or that defendant was innocent of charge). Accordingly, I must dissent from that portion of the majority opinion remanding this case for a new sentencing hearing.

NEWMAN, J., joins this concurring and dissenting opinion.