J-S78003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK ANTHONY LOVE, | |
| Appellant | No. 929 WDA 2015 |

Appeal from the PCRA Order Entered May 13, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001676-2006

BEFORE: BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED NOVEMBER 30, 2016**

Appellant, Mark Anthony Love, appeals from the May 13, 2015 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant contends that the PCRA court erred by denying his claim that his trial counsel acted ineffectively by not requesting a 'corrupt source' jury instruction pertaining to two of the Commonwealth's witnesses. After careful review, we affirm.

Following a jury trial in January of 2008, Appellant was convicted of second-degree murder, robbery, criminal trespass, and carrying a firearm

_____

[*] Former Justice specially assigned to the Superior Court.

without a license.  We summarize the pertinent facts underlying his convictions, as follows.[1]

On January 19, 2006, at approximately 7 p.m., police responded to a report of shots fired at a playground in a housing complex in West Mifflin Borough, Allegheny County.  At the scene, officers found the body of Eric Martin, who had been shot.  In the area of Martin's body, police discovered a 9 millimeter shell casing.  Witnesses who had gathered at the scene also told police that two brothers, Lamothe and Sheldon Meggett, had been seen running from the playground around the time of the shooting.  As such, police interviewed the Meggett brothers later that night.  The brothers both initially lied about their whereabouts at the time of the shooting, but during a subsequent interview, they admitted that they had been at the playground when Martin was shot.  The brothers told police that earlier that evening, they had committed an armed robbery of another individual at the playground, and had then given the gun to Appellant.

On January 21, 2006, Allegheny Homicide Detective Thomas DeFelice, along with several uniformed officers, went to Appellant's home to speak to him.  Appellant was leaving his apartment as the detective and backup officers arrived.  When Detective DeFelice identified himself and ordered Appellant to stop, Appellant began to run.  A foot chase ensued, but

_____

[1] For a full recitation of the facts, **see** Trial Court Opinion, 7/18/11, at 3-6.

Appellant was quickly apprehended. In his possession, officers found a loaded 32-caliber handgun, as well as a magazine for a 9 millimeter gun. Investigators later searched Appellant's apartment and discovered a 9 millimeter Smith and Wesson semi-automatic firearm. That gun was tested and found to be the gun that had discharged the shell casing found at the scene of Martin's murder.

At Appellant's trial, Detective DeFelice testified that after Appellant's arrest, he and another detective interviewed Appellant. During that interview, Appellant admitted that he had been with the Meggett brothers at the playground, and that he had decided to rob Martin. Appellant told the detectives that he placed a gun - specifically, the 9 millimeter firearm that officers had found in his apartment - to Martin's head, at which point Martin began to run. Appellant stated that he fired once at Martin only to scare him, but Martin fell to the ground. Realizing he had hit Martin, Appellant then ran, as did the Meggett brothers. Appellant told the detectives that the Meggett brothers had no involvement in the robbery.

Sheldon and Lamothe Meggett also testified at Appellant's trial. First, Sheldon testified that he was at the playground with Lamothe and Appellant when Appellant began talking about robbing someone. N.T. Trial Vol. 2, 1/24/08, at 80. Sheldon and Lamothe eventually decided to leave the playground, and Appellant and Eric Martin remained. *Id.* at 90. Sheldon testified that as he was walking away, he "heard two cracks like it was a firecracker." *Id.* at 91. Sheldon then saw Appellant run past him. *Id.*

Sheldon and Lamothe followed Appellant into a nearby home, where Appellant told them that he had shot Martin after unsuccessfully trying to rob him. *Id.* at 92. Sheldon testified that he was not immediately honest with police when they interviewed him about Martin's murder because he did not want to get Appellant into trouble. *Id.* at 95.

Second, Lamothe Meggett testified that he was with Appellant and Sheldon at the playground on the evening of Martin's murder. *Id.* at 168. Lamothe admitted that earlier that evening, he had used Appellant's gun to rob someone at the playground. *Id.* After committing that robbery, Lamothe gave the gun back to Appellant. *Id.* at 170. Lamothe and Sheldon then decided to leave the playground. *Id.* at 173-74. As they were walking away from Appellant, Lamothe turned back toward Appellant and saw Appellant pointing a gun at Martin, who had his hands up. *Id.* at 176. Lamothe heard a shot and then saw Appellant running towards him. *Id.* Appellant later told Lamothe that he had shot Martin because "[h]e tried to run." *Id.* at 177.

Based on this evidence, the jury convicted Appellant of the above-stated offenses. On May 27, 2008, Appellant was sentenced to life imprisonment, without the possibility of parole. Appellant did not initially file a direct appeal; however, he subsequently petitioned for the reinstatement of his direct appeal rights, which the court granted on February 9, 2011. Appellant then filed a timely notice of appeal on February 16, 2011. On December 9, 2011, this Court affirmed Appellant's judgment of sentence,

and on November 8, 2012, our Supreme Court denied his petition for allowance of appeal. ***See Commonwealth v. Love***, 40 A.3d 189 (Pa. Super. 2011) (unpublished memorandum), *appeal denied,* 56 A.3d 397 (Pa. 2012).

On November 5, 2013, Appellant filed a timely, *pro se* PCRA petition. Counsel was appointed and an amended petition was filed on Appellant's behalf, asserting an ineffective assistance of counsel (IAC) claim premised on counsel's failure to request a 'corrupt source' jury charge regarding Sheldon and Lamothe Meggett. After conducting a PCRA hearing on May 11, 2015, the PCRA court denied Appellant's petition. He filed a timely notice of appeal, and also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court filed a brief responsive opinion on June 9, 2016. Herein, Appellant presents one issue for our review:

> I. Whether the PCRA court erred in denying Appellant post-conviction relief on his claim that trial counsel was ineffective for failing to request a corrupt source jury instruction?

Appellant's Brief at 2.

First, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." ***Commonwealth v. Morales***, 701 A.2d 516, 520 (Pa. 1997) (citing ***Commonwealth v. Travaglia***, 661 A.2d 352, 356 n.4 (Pa. 1995)).

Where, as here, a petitioner claims that he received ineffective assistance of

counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland**[ **v. Washington**, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali, supra**. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, 608 Pa. at

- 6 -

86–87, 10 A.3d at 291 (quoting **Commonwealth v. Collins**, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing **Strickland**, 466 U.S. at 694, 104 S.Ct. 2052)).

**Commonwealth v. Spotz**, 84 A.3d 294, 311-12 (Pa. 2014).

In this case, Appellant argues that his trial counsel was ineffective for not requesting a 'corrupt source' jury charge pertaining to Sheldon and Lamothe Meggett. Such a charge "advises the jury that if it finds that a Commonwealth witness was an accomplice of the accused, the jury should consider the testimony of the witness with caution." **Commonwealth v. Hackett**, 627 A.2d 719, 724 (Pa. 1993). According to Appellant, a corrupt source charge was warranted because the evidence indicated that the Meggett brothers were accomplices in the murder of Eric Martin. Appellant also stresses that trial counsel essentially conceded at the PCRA hearing that he had no reasonable basis for not requesting such a charge, testifying that his failure to do so was simply "an oversight." N.T. PCRA Hearing, 5/11/15, at 7. Finally, Appellant contends that he was prejudiced by the omission of a corrupt source jury charge. His entire argument pertaining to the prejudice prong of the ineffectiveness test is as follows:

> The prejudice to [Appellant] which resulted was the denial of a fair trial. If a corrupt source charge had been given, the jury would have had a legal basis to reject the Meggett brothers' trustworthiness, and would not have credited the Meggetts' statements to the police and their testimony at trial, which constituted the primary evidence against [Appellant]. As such, there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The truth-determining process was thereby severely impaired. For this reason, counsel must be deemed ineffective and [Appellant] should be granted a new trial.

Appellant's Brief at 21 (internal citations and quotation marks omitted).

We need not assess the arguable merit and reasonable basis prongs of the IAC test, as Appellant's prejudice argument fails to convince us that the PCRA court erred by denying his petition. **See Simpson**, 66 A.3d at 260 (stating that the failure to prove any one of the three prongs of the ineffectiveness test defeats an IAC claim). Appellant fails to acknowledge that, aside from the Meggett brothers' testimony, there was other strong evidence of his guilt. Namely, Appellant confessed to Detective DeFelice, and the gun that discharged the shell casing found at the scene of Martin's murder was found in Appellant's apartment. Appellant also admitted that that gun belonged to him. Additionally, when Detective DeFelice went to Appellant's apartment to talk to him after the murder, Appellant ran from the detective. When he was apprehended, he had a magazine for a 9 millimeter gun in his possession, further linking him to the probable murder weapon. In light of this evidence, Appellant has not convinced us that there is a reasonable probability that the result of his trial would have been different had counsel requested a corrupt source jury charge regarding the Meggett brothers' testimony. Accordingly, the PCRA court did not err in denying Appellant's ineffectiveness claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/2016