J-S13013-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN ANDREW HENDERSON, | |
| Appellant | No. 815 WDA 2018 |

Appeal from the PCRA Order Entered May 11, 2018
In the Court of Common Pleas of Venango County
Criminal Division at No(s):
CP-61-CR-0000425-2004
CP-61-CR-0000427-2004

BEFORE: BENDER, P.J.E., OTT, J., and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.: FILED MAY 13, 2019

Appellant, John Andrew Henderson, appeals from the post-conviction court's May 11, 2018 order dismissing his first, timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

This Court previously summarized the facts of Appellant's underlying case, as follows:

> Based on evidence of drug activity developed during an eleven month investigation, including information furnished by a confidential informant [(CI)], state police obtained a search warrant for Appellant's residence. At a meeting prior to execution of the search warrant[,] the troopers were informed that Appellant kept cocaine in his bedroom and firearms in the home. Early in the morning of April 8, 2004, several troopers surrounded the house, a one story building. The first trooper knocked on the door

_____

* Retired Senior Judge assigned to the Superior Court.

three times and called out "State Police, search warrant." After about twenty seconds another trooper told the team that she observed movement in the bedroom window, approximately fifteen feet from the front door. The case officer gave the order to enter. When the first trooper's efforts to force the door open with his shoulder proved unsuccessful, another trooper used a battering ram to gain entry into the residence. Inside Appellant's residence the state police found controlled substances, drug paraphernalia, and firearms. He was arrested.

Commonwealth v. Henderson, No. 1113 WDA 2006, unpublished memorandum at 1-2 (Pa. Super. filed March 7, 2008) (footnote omitted).

As the Commonwealth explains in its brief,[1] Appellant was charged in seven separate cases, each based on an incident of his delivering, and/or possessing, narcotics. In six of those cases, he was charged with delivery of cocaine and related offenses. In the seventh, Appellant was charged with possession with intent to deliver cocaine and marijuana, and other related crimes, stemming from the execution of the search warrant at his residence. All seven cases were joined for a jury trial that was conducted in February of 2006. At the close thereof, the jury convicted Appellant in three of the cases, and acquitted him in the other four. On May 19, 2006, Appellant was sentenced to an aggregate term of 72 to 156 months' incarceration. He filed a timely appeal from his judgment of sentence, and we affirmed. Commonwealth v. Henderson, 953 A.2d 599 (Pa. Super. filed March 7,

_____

[1] We note that in Appellant's "Statement of the Case" section of his brief, he provides no discussion of the facts or procedural history of his underlying convictions, thus hampering our review of his claims. Consequently, we rely, in part, on the Commonwealth's summary, to which Appellant has not objected.

2008) (unpublished memorandum). Appellant did not seek permission to appeal to our Supreme Court.

On November 3, 2008, Appellant filed a timely, pro se PCRA petition. Counsel was appointed, but for some reason, an evidentiary hearing was not held until November 1, 2013. Then, after providing Appellant's counsel with additional time to file a brief and awaiting a transcription of the PCRA hearing, the PCRA court "forgot about the proceedings," and the case "was only reopened … when the [c]ourt [s]taff … reminded the [c]ourt that no decision had been rendered." PCRA Court Opinion (PCO), 5/11/18, at 1. Thus, it was not until May 11, 2018, that the PCRA court entered an order dismissing Appellant's petition.

On June 1, 2018, Appellant filed a timely notice of appeal.[2] Appellant also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court

_____

[2] We recognize that Appellant filed a single notice of appeal listing two docket numbers, which violates Pa.R.A.P. 341(a) and our Supreme Court's decision in Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018). There, the Court held that "in future cases Rule 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." Id. at 977 (emphasis added). The Supreme Court's motivation for making its holding in Walker prospective only was to ensure that appellants have notice that quashal will result from non-compliant notices of appeal because, for decades, the appellate courts in this Commonwealth have declined to quash in such circumstances. See id. Because the Walker decision was filed on June 1, 2018, the same day that Appellant filed his non-compliant notice of appeal, it would be unreasonable to conclude that Appellant had adequate notice of Walker. Accordingly, we decline to quash this appeal.

thereafter issued a Rule 1925(a) opinion, stating that it was relying on the "Findings" it issued on May 11, 2018, in conjunction with its order dismissing Appellant's petition.

Herein, Appellant presents three questions for our review:

1. The [PCRA] court committed error by determining that ... trial counsel was not ineffective by revealing the FBI investigation to the jury?

2. Did the [PCRA] court err by determining that trial counsel was not ineffective when trial counsel failed to obtain copies of the FBI wiretaps as part of the discovery in the case?

3. Did the [PCRA] court err by determining that there was no reasonable probability that the outcome of the proceeding would have been different?

Appellant's Brief at vii (unnecessary capitalization omitted).

In the Argument section of his brief, Appellant addresses all three of these issues collectively and, thus, we will do the same. Initially, we note that, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." Commonwealth v. Morales, 701 A.2d 516, 520 (Pa. 1997) (citing Commonwealth v. Travaglia, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or

- 4 -

innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [Commonwealth v.] Colavita, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing Strickland[ v. Washington, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the Strickland performance and prejudice test into a three-part inquiry. See [Commonwealth v.] Pierce, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. Commonwealth v. Ali, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." Commonwealth v. Simpson, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. See Ali, supra. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Colavita, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Commonwealth v. King, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" Ali, 608 Pa. at 86–87, 10 A.3d at 291 (quoting Commonwealth v. Collins, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing Strickland, 466 U.S. at 694, 104 S.Ct. 2052)).

Commonwealth v. Spotz, 84 A.3d 294, 311-12 (Pa. 2014).

Presently, Appellant avers that his trial counsel acted ineffectively by eliciting testimony from Pennsylvania State Trooper Mitchell York that revealed to the jury that the FBI had investigated Appellant for the drug-

related activities underlying his convictions in this case. Specifically, Appellant takes issue with the following portion of trial counsel's cross-examination of Trooper York, and the arguments by counsel that stemmed therefrom:

[Trial Counsel:] Now, let's talk about the Halloween incident. Are you familiar with what I'm talking about?

\* \* \*

The transaction which occurred on October 31st, 2003?

[Trooper York:] Yes, sir.

[Trial Counsel:] I think I stated in my opening, did you have a recorder on [the CI] that night?

[Trooper York:] Yes.

[Trial Counsel:] Did you -- [w]as it a body recorder? What was it?

[Trooper York:] It was a body recorder. It was an Eagle II body recorder.

[Trial Counsel:] Is that so you could record all the conversation she was having?

[Trooper York:] Yes.

\* \* \*

[Trial Counsel:] I haven't seen that recording or a transcript of that recording. Do you have one?

[Trooper York:] No I don't.

[Trial Counsel:] Does anybody have it?

[Trooper York:] I believe that the CD's that were made from those recordings still are retained at the FBI office in Erie.

[Trial Counsel:] Are they good?

* * *

[Trooper York:] I've never listened to them....

[Trial Counsel:] Who made these recordings?

[Trooper York:] I made --- I placed the body wire on her.  With an Eagle II it has to be taken from that and transferred onto a CD, which is done at the FBI office.

[Trial Counsel:] Okay, so you put the body recorder on her, is that correct?

[Trooper York:] That's correct.

* * *

[Trial Counsel:] Was it your idea to put the body recorder on her?

[Trooper York:] Yes it was.

* * *

[Trial Counsel:] And you called in the FBI to do it because they're more sophisticated in doing this, correct?

[Trooper York:] We were using their equipment.  Originally this was going to be a federal case and it didn't work out that way.

[Trial Counsel:] So, she made the body recording and it was taken to Erie, is that correct?

[Trooper York:] That's correct.

[Trial Counsel:] And you don't know what happened to it?

[Trooper York:] It's still retained in Erie.

[Trial Counsel:] Have you ever seen a transcript sir?

[Trooper York:] I saw some of the first transcripts, not from that one, but from the ones that we used with Tim Miller, I saw some of those, but other than that, no.

[Commonwealth:] Your Honor, before we go any farther [sic] with this body recording, the FBI was running this recording[] and it

was going to be an FBI case. They ran them according to federal law, which is not sufficient for state court. I cannot use these recordings in state court under state law; they did not follow the state law they followed the federal law. That's why they're not here.

[Trial Counsel:] I don't think --- First of all, they should have been disclosed in the first place, number one, Your Honor.

[Commonwealth:] I can't disclose what I can't use because then I'm under penalty under the state law of disclosing things I can't use that were not taken under state law. I'm not allowed.

[Trial Counsel:] Well, I'm not making an argument, I just said that there were recordings made and we don't have them, that's all.

* * *

[The Court:] I am a little uncomfortable because [the Commonwealth] probably just testified. You could probably ask Trooper York the same thing and get the same evidence out, but in any event, I think it is proper cross.

[Commonwealth:] It's proper cross on evidence I can't use in a state court?

[The Court:] Well you have just explained why you cannot use it. Go ahead. Do you want me to give them some instruction on the wiretap, about the ---

[Trial Counsel:] I'm not asking for anything. I'm just trying to find my place.

N.T. Trial (Day 1), 2/13/16, at 133-37. At that point, counsel's cross-examination of Trooper York moved on to other issues.

Appellant now avers that trial counsel acted ineffectively by eliciting this testimony, which revealed that the FBI had been investigating him. According to Appellant, this prejudiced him because it implied to the jury that he "was in fact a 'large drug dealer' and he was 'large enough' to be under surveillance by the FBI and not the local authorities." Appellant's Brief at 8. Appellant

- 8 -

stresses that "Venango County is a small rural county" and, thus, "[a]ny reference to the FBI and wiretaps would have tainted the jury into believing that [] Appellant was a big fish and under the surveillance of the Federal authorities." Id. He also claims that, at the PCRA hearing, trial counsel "gave no strategic reason as to why he brought up the FBI investigation during the trial." Id. at 12. According to Appellant, there "was absolutely zero justification for disclosing to the jury the existence of an FBI wiretap[,]" id. at 14 (emphasis in original), which prejudiced him by "paint[ing him] in such a negative light that the jury would have concluded that [] Appellant was guilty" based on that evidence alone, id. at 15. Appellant also argues that his counsel was ineffective by not obtaining the recordings testified about by Trooper York, so as "to find out what they contained, or whether the evidence was exculpatory in nature." Id. He also maintains that counsel erred by not accepting the court's offer to provide a limited instruction to the jury regarding the recordings. Id. at 7. For all of these reasons, Appellant contends that his trial counsel acted ineffectively.

We disagree. Initially, the record belies Appellant's claim that counsel offered no strategic reason for his cross-examination of Trooper York. At the PCRA hearing, counsel testified that he questioned Trooper York about the recordings "[t]o make the Commonwealth look bad" for not producing that evidence. N.T. PCRA Hearing, 11/1/13, at 37. Counsel explained that he was attempting to show the jury that the Commonwealth had "some real proof, real evidence of what this conversation [was between Appellant and the CI]

that [was] disputed; they've got it; they won't give it to us." Id. In other words, counsel was trying to raise the inference that the Commonwealth did not produce the recordings because they were favorable to Appellant. The PCRA court concluded that counsel's testimony "was credible and reasonable." PCO at 2. We discern no error in that decision.

Additionally, Appellant has also failed to establish prejudice. The Commonwealth accurately points out that Trooper York's testimony pertained to recordings made by the CI during a controlled purchase at Bernie's Bar on October 31, 2003. Appellant was ultimately acquitted of the charges stemming from that controlled buy, as well as the charges in three of his other cases. This undercuts his argument that he suffered prejudice due to trial counsel's eliciting the at-issue testimony from Trooper York.

Moreover, the PCRA court concluded that Appellant failed to demonstrate prejudice on slightly different grounds. The court explained:

> [T]he [c]ourt, as the [t]rial [j]udge, concludes that this trial was a very strong prosecution case. There had been search warrants executed where contraband was seized. There were several material [w]itnesses. The case was well-tried with two (2) very experienced trial attorneys.
>
> [Appellant] has not even touched on the issue of how the outcome would have been different, or that the outcome in this case was not reliable. He would have us speculate that the mere mention that the FBI had run taps would unduly bias the jury against him. In light of the credible testimony of [trial counsel] and our personal recollection of the magnitude of the Commonwealth's evidence against [Appellant], we find [Appellant's] claim lacks merit.

PCO at 3.

Given the record before us, and for the reasons stated supra, we discern no error in the PCRA court's conclusion that Appellant failed to prove that his trial counsel acted ineffectively. Accordingly, the PCRA court properly dismissed his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2019