J-S58029-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHNNY L. PENNINGTON, III | : | |
| | : | |
| Appellant | : | No. 525 WDA 2019 |

Appeal from the PCRA Order Entered March 11, 2019
In the Court of Common Pleas of Clarion County Criminal Division at
No(s): CP-16-CR-0000600-2016

BEFORE: PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY BENDER, P.J.E.: FILED JANUARY 7, 2020

Appellant, Johnny L. Pennington, III, appeals from the post-conviction court's March 11, 2019 order denying his timely petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant argues that his trial counsel acted ineffectively by not calling a certain witness to testify at the pretrial suppression hearing. After careful review, we affirm.

On April 17, 2018, Appellant was convicted by a jury of sexual exploitation of children (18 Pa.C.S. § 6320(a)), endangering the welfare of children (18 Pa.C.S. § 4304(a)(1)), and criminal solicitation to commit rape of a child (18 Pa.C.S. § 902(a)). Appellant's convictions were premised on evidence that he "sent a Snapchat message to his then girlfriend, Elynn Sumser, requesting that Ms. Sumser perform sexual acts on his minor son." Appellant's Brief at 8. As Appellant explains, prior to his trial,

the Commonwealth filed ["N]otice of Prior Bad Acts and Motion in Limine[,"] in which it was indicated that the Commonwealth would be introducing text messages extracted from a Samsung Galaxy Note 4 cellular phone at trial. On June 28, 2017, [Appellant] filed a ["]Motion to Suppress Evidence["] in which it was alleged that the Pennsylvania State Police conducted an unconstitutional search of [Appellant's] Samsung Galaxy Note 4 cellular phone and all data, information and evidence obtained from the phone should be suppressed. On June 30, 2017, the Commonwealth filed an ["]Answer to [Appellant's] Motion to Suppress Evidence[,"] in which it was alleged that the Pennsylvania State Police, specifically, Corporal Timothy Lencer, reasonably believed the Samsung Galaxy Note 4 to be the property of [Ms.] Sumser, the girlfriend with whom [Appellant] resided, who gave him authorization to search the phone, and, therefore the police had valid consent to search said phone.

On July 10, 2017, the trial court held oral argument and an evidentiary hearing on the Commonwealth's ["]Notice of Prior Bad Acts and Motion in Limine["] as well as [Appellant's] ["]Motion to Suppress Evidence.["] At the hearing held on July 10, 2017, Corporal Lencer testified that[,] during the investigation[,] he came into possession of a Samsung Galaxy Note 4 cellular phone, a[n] SVP Tablet, and two Alcatel cell phones. He testified that his understanding at the time was that the owner of the phones and the tablet was [Ms.] Sumser. Corporal Lencer also testified that [Ms.] Sumser had provided consent for him to search all four phones, including the Samsung Galaxy Note 4[,] and at no time was he aware or had the belief that [Appellant] was the owner of the Samsung Galaxy Note 4. [Appellant's trial counsel, Michael] Marshall[, Esq.,] did not call [Ms.] Sumser to testify at the hearing held on July 10, 2018[,] regarding whether she had told Corporal Lencer anything regarding the ownership of the Samsung Galaxy Note 4.

By [o]rder of [c]ourt dated July 13, 2017, the [c]ourt determined that Corporal Lencer had consent to search the Galaxy Note 4 under the apparent authority doctrine[,] as he reasonably believed [Ms.] Sumser had authority to consent to said search. Thereafter, the Commonwealth presented evidence it had obtained from the Samsung Galaxy Note 4 cell phone at [Appellant's] trial. Specifically, the Commonwealth introduced page 690 of the Samsung Galaxy Report, lines 92 and 91, indicating that on October 1, 2016[,] [Ms.] Sumser received a message from the Appellant's phone stating, "Wanna be bad

mommy and have dirty playtime with your little boys ppl[?"] Additionally, messages were sent from the Galaxy Note 4 to [Ms.] Sumser's phone on September 5, 2016[,] as recorded in the extraction report. The Commonwealth introduced lines 2532, 2533, 2535, 2536 2539, 2540, and 2541 from [Appellant's] portion of that conversation which read[, verbatim,] as follows:

Line 2532[:] Yes baby I do

Line 2533[:] Tell me more baby

Line 2535[:] You wanna put him on top of you and grind his cock against your pussy

Line 2536[:] You gotta be gentle hes tiny baby

Line 2539[:] ??

Line 2540[:] You want his pp huh mommy

Line 2541[:] Rub your pussy with [the victim's] underwear baby please

The court permitted the admission of the extraction report from the Samsung Galaxy Note 4 during the trial on the basis of apparent authority of [Ms.] Sumser to give the phone to Corporal Lencer. However, at [Appellant's] trial held on April 16, 2018, [Ms.] Sumser testified that when she gave the Samsung Galaxy Note 4 to Corproal [sic] Lencer, she told him it was … Appellant's cell phone.

Id. at 8-12 (citations to the record omitted).

At the close of Appellant's jury trial, he was convicted of the above-stated offenses. On May 9, 2018, the court sentenced Appellant to an aggregate term of 87 to 261 months' incarceration.

Following the trial, … Appellant filed a [p]ost [s]entence [m]otion requesting a new trial on the grounds that the trial court had erred by denying [Appellant's] Motion to Suppress on the basis that Trooper Lencer believed [Ms.] Sumser had apparent authority to consent to the search of the Samsung Galaxy Note 4[,] when [Ms.] Sumser later testified at trial that she told Corporal Lencer that said phone belonged to [Appellant]. In the Opinion and Order dated August 21, 2018, the trial court stated that it could not

- 3 -

make an error in denying the suppression motion by failing to consider evidence, specifically the testimony of [Ms.] Sumser at the trial, when the evidence was not presented at the time of the suppression hearing.

*Id.* at 12.

Appellant did not file a direct appeal. Instead, on August 23, 2018, he filed a pro se PCRA petition. Counsel was appointed and an amended petition was filed on Appellant's behalf on December 4, 2018. Therein, Appellant argued that his trial counsel, Attorney Marshall, was ineffective by failing to call Ms. Sumser to the stand at the suppression hearing. On February 13, 2019, the court conducted an evidentiary hearing. There,

> [Attorney] Marshall[] testified that[,] although the basis for the suppression hearing with regard to the information extracted from the Samsung Galaxy Note 4 was whether Corporal Lencer had apparent authority from [Ms.] Sumser to search the phone, he did not interview her prior to the suppression hearing[,] and that it never occurred to him to talk to her or have her come in for the hearing. He indicated that[,] had he known what she would have testified to regarding authority to search the phone, he would have called her at the suppression hearing. He also testified that having [Ms.] Sumser testify at the suppression hearing would have made a much stronger case for the suppression of the evidence that was obtained from the Samsung Galaxy Note 4.

*Id.* at 13.

On March 11, 2019, the PCRA court entered an opinion and order denying Appellant's petition. The court concluded, for the reasons set forth *infra*, that Appellant failed to establish that he was prejudiced by counsel's alleged error. Appellant filed a timely notice of appeal on April 10, 2019. He also complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court thereafter issued a

Rule 1925(a) opinion indicating that it was relying on the rationale set forth in its March 11, 2019 opinion. Herein, Appellant states one issue for our review:

> Whether the PCRA Court erred in denying post-conviction relief to [Appellant] for a failure to establish prejudice created by the ineffective assistance of trial counsel when trial counsel failed to call [Ms.] Sumser to testify at the suppression hearing and the court concluded that the claim of ineffective assistance of counsel had arguable merit and the actions of trial counsel lacked a reasonable basis to effectuate … Appellant's interest?

Id. at 5.

"This Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." Commonwealth v. Morales, 701 A.2d 516, 520 (Pa. 1997) (citing Commonwealth v. Travaglia, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [Commonwealth v.] Colavita, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing Strickland [v. Washington, 466 U.S. 668 … (1984)]). In Pennsylvania, we have refined the Strickland performance and prejudice test into a three-part inquiry. See [Commonwealth v.] Pierce, [527 A.2d 973 (Pa. 1987)]. Thus,

to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. Commonwealth v. Ali, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." Commonwealth v. Simpson, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. See Ali, supra. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Colavita, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Commonwealth v. King, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" Ali, … 10 A.3d at 291 (quoting Commonwealth v. Collins, … 957 A.2d 237, 244 ([Pa.] 2008) (citing Strickland, 466 U.S. at 694….)).

Commonwealth v. Spotz, 84 A.3d 294, 311-12 (Pa. 2014).

In this case, the PCRA court provided the following analysis of Appellant's ineffectiveness claim in its opinion:

[T]he court finds that [Appellant] has met his burden of proving by a preponderance of evidence that the claim of ineffectiveness of counsel has arguable merit. Further, since trial counsel made an assumption that [Ms.] Sumser would be a hostile witness and did not attempt to determine what her testimony would in fact be, his inaction in calling her as a witness lacked a reasonable basis designed to effectuate [Appellant's] interest. Still, [Appellant] must … prove the third prong of the test; that [A]ttorney Marshall's action or inaction resulted in prejudice to him.

"To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of

- 6 -

the proceedings would have been different but for counsel's ineffectiveness." [Commonwealth v.] Chmiel, 30 A.3d [1111,] 1127-28 [(Pa. 2011)].

During the trial, April Pennington, [Appellant's] estranged wife and mother of his son[, the victim], testified about text messages she had received on December 1, 2011[,] and December 2, 2011[,] from [Appellant,] when [the victim] was approximately two and a half years old. In the messages, [Appellant] described his sexually explicit dream about April [being] involved in sexual acts with their son, [the victim]. N.T. [] [T]rial[, 4/16/18,] at pp. 137-43.

Additionally, the Commonwealth presented evidence of Facebook messages retrieved from the SVP Tablet Extraction Report pages 39-40 (Commonwealth's Exhibit 8). [Ms.] Sumser testified that the message referred to her desire to not have "incest for tonight just rough." She testified that[,] "I didn't want him calling me mommy" [] but she wanted "grabbing, groping, and choking[,]" as she was interested in rough sex. N.T. [] [T]rial[, 4/16/18,] at pp. 137-43. [Ms.] Sumser also testified that [Appellant] had a "mother/son fetish" and calling her ["]mommy["] was an example of the types of things he would say during sex. [Id.] at pp. 77. She also testified that[,] "[h]e asked me to put his son's underwear on and play with myself." [Id.] at p. 79. Further, the Commonwealth presented evidence that on November 21, 2016, prior to the Snap[c]hat [message] in question being sent[,] [Appellant] had searched on the internet for "mom son incest sex toons" using the SVP Tablet. [Id.] at p. 39; [N.T.] Trial[, 4/17/18,] at page 113; and Commonwealth'[s] Exhibit 4. Finally, there was the screen shot of the Snap[c]hat itself that [Ms.] Sumser testified she received on her phone from [Appellant] where [Appellant] asked her to perform oral sex on his son, [the victim]. N.T. [] [T]rial[, 4/16/18,] at pp. 96-98 and Commonwealth's Exhibit 11.

Under these circumstances, there was sufficient evidence of [Appellant's] "mommy/son fetish[,]" and his past acts showing his motive and planning of encouraging women with whom he was in relationships to participate in this fetish[,] and also to involve his child[, the victim]. If the evidence that was extracted from the Samsung Galaxy Note 4 had been suppressed, the jury still could have reasonably concluded that [Appellant] had this sexual propensity, and he had sent the Snap[c]hat message to [Ms.] Sumser. The jury could have reasonably concluded that the

Commonwealth met its burden of proving [Appellant] guilty beyond a reasonable doubt. Therefore, there is not a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness.

PCRA Court Opinion, 3/11/19, at 7-9.

Appellant now contends that the PCRA court erred by concluding that he failed to demonstrate prejudice. Appellant argues that the trial evidence discussed by the PCRA court "does not carry the same weight as the sexually explicit text messages[,] which the jury members could read for themselves and attribute directly to … Appellant." Appellant's Brief at 24. He additionally stresses that, "[b]ecause the text messages from the Samsung Galaxy Note 4 [phone] came directly from … Appellant, it was more prejudicial than the evidence and testimony offered by … Appellant's ex-wife and ex-girlfriend[,] which was subject to credibility determinations." Id. at 25. Therefore, Appellant concludes that, "[w]ithout the introduction of the text messages extracted from the [phone]…, there is a reasonable certainty that the outcome of the proceeding, a guilty verdict on all charges, would have been different." Id.

We do not agree. While we recognize that the messages from Appellant's phone were prejudicial, we cannot accept his position that they controlled the jury's verdict in this case, considering the other evidence of Appellant's guilt. Namely, Ms. Sumser testified that Appellant had a sexual fetish about incest, and that he sent her a Snapchat message that stated, in relevant part: "I really want you to suck my sons cock[.] I'm done being closed and clouded about it[.] I really want something to happen…[.]" N.T.

Trial, 4/16/18, at 98. Ms. Sumser took a screen shot of this message, which was presented at trial. Her testimony that Appellant sent this message to her was corroborated by the screen shot she took of the message; the evidence that, just prior to this message being sent, Appellant had conducted an internet search for pornography depicting incest; the Facebook messages sent by Ms. Sumser to Appellant discussing his incestuous fantasies; and April Pennington's testimony that Appellant had communicated his sexual thoughts about incest to her, as well. Clearly, the totality of the evidence supporting Appellant's guilt was compelling, even without the at-issue messages from his phone. Therefore, we agree with the PCRA court that Appellant has failed to demonstrate a reasonable probability that the outcome of his trial would have been different, had that evidence been suppressed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2020