J-S15010-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RALPH JUSTIN CARTER | : | |
| | : | |
| Appellant | : | No. 1105 WDA 2019 |

Appeal from the PCRA Order Entered May 24, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008812-2012

BEFORE:   BENDER, P.J.E., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED MAY 27, 2020

Appellant, Ralph Justin Carter, appeals pro se from the post-conviction court's May 24, 2019 order denying his timely-filed petition under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant presents several claims of ineffective assistance of counsel (IAC).  After careful review, we vacate the court's order denying Appellant's petition, and remand for an evidentiary hearing.

This Court previously summarized the pertinent facts and procedural history of Appellant's case, as follows:

> [Parole] Agent [Darin] Reid was Appellant's parole agent. N.T., 1/15/2013, at 4.  On June 15, 2012, Appellant tested positive for marijuana and cocaine.  [Id.] at 21, 25; N.T., 8/22/2013, at 7.  Appellant was to have a drug evaluation.  N.T.,

_____

[*] Former Justice specially assigned to the Superior Court.

8/22/2013, at 7. He completed the initial evaluation, but failed to appear for the June 27, 2012 follow-up evaluation. Id. at 7.

On July 2, 2012, a confidential informant advised Agent Reid that Appellant "was selling drugs, using drugs and in possession of a firearm." N.T., 1/15/2013, at 5. The confidential informant was Jennifer Scott, who had a child with Appellant.[5] N.T., 4/22/2013, at 5. She told Agent Reid she was concerned because her son stayed with Appellant, and Appellant was using marijuana and cocaine, was selling drugs, and she believed he had a gun in his residence. Id. at 5-6.

> [5] Ms. Scott contacted Appellant's counsel on the morning of the first suppression hearing and identified herself. Appellant then filed a motion to disclose the confidential information, which he withdrew. Agent Reid referred to Ms. Scott at the second hearing.

Ms. Scott informed Agent Reid that Appellant had recent driving without a license tickets, which Agent Reid confirmed. N.T., 1/15/2013, at 37; N.T., 4/22/2013, at 6. She also mentioned the drug use involved marijuana and cocaine for which Appellant had tested positive on June 15, 2013, a mere two-and-a-half weeks prior to receipt of the information from Ms. Scott. N.T., 4/22/2013, at 5-6. Further, Ms. Scott showed Agent Reid a video from a Facebook page where, during a cell phone call, Appellant slurred his speech and appeared intoxicated. N.T., 1/15/2013, at 6; N.T., 4/22/2013, at 7. During this telephone conversation, Appellant mentioned shooting raccoons. Id. at 6-7. As conditions of Appellant's parole, he was not permitted to drink alcohol or use a firearm. Id. at 7.

On July 2, 2012, Agent Reid discussed the information supplied by Ms. Scott and Appellant's missed drug evaluation with his supervisor. N.T., 4/22/2013, at 8. They decided to detain Appellant and conduct a home inspection search of Appellant's residence. Id. at 8-9.

On July 3, 2012, Appellant arrived at the probation office with his girlfriend. N.T., 1/15/2013, at 8. The parole agents detained Appellant and conducted a home inspection search of his residence. After the agents discovered heroin in one of Appellant's bedrooms, the home inspection search ceased and the agents notified the police. Id. at 9-10. The McKeesport Police Department applied for and obtained a search warrant for Appellant's residence. Id. at 10. The police conducted a search,

which yielded drugs, drug paraphernalia, and a gun. [Id.] at 35; Police Criminal Complaint at 2.

Appellant was arrested on July 3, 2012. On January 9, 2013, Appellant filed a motion to suppress, which he amended on April 9, 2013. On January 15, 2013 and April 22, 2013, the trial court held suppression hearings. On August 13, 2013, the trial court denied the amended motion.

Commonwealth v. Carter, No. 503 WDA 2014, unpublished memorandum at *2-4 (Pa. Super. filed Aug. 14, 2015) (one footnote omitted).

On October 23, 2013, following a jury trial, Appellant was convicted of persons not to possess a firearm, possessing a controlled substance with the intent to deliver (PWID), possession of a controlled substance, and possessing drug paraphernalia. On January 30, 2014, he was sentenced to an aggregate term of 8 to 16 years' incarceration. On direct appeal, we affirmed Appellant's convictions, but determined that his sentence was illegal because the court had imposed an unconstitutional mandatory-minimum term of incarceration, and also exceeded the statutory-maximum term for his PWID offense. See id. at 14-15. Accordingly, we vacated Appellant's judgment of sentence and remanded for resentencing. Appellant was resentenced to an aggregate term of incarceration of 7 years and two months to 14 years and four months.

Appellant thereafter filed a timely PCRA petition. He was appointed counsel, who filed a petition to withdraw and 'no-merit letter' pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), and Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (en banc). On November 21, 2017, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing. Appellant did not file a response, and

on December 15, 2017, the court issued an order dismissing his petition and granting counsel's petition to withdraw.

Appellant filed a timely appeal, claiming, inter alia, that he had not received the court's Rule 907 notice. On January 11, 2019, this Court vacated the order denying Appellant's petition and remanded for the court to provide him with an opportunity to respond to its notice of intent to dismiss his petition. See Commonwealth v. Carter, 66 WDA 2018, unpublished memorandum at *5 (Pa. Super. filed Jan. 11, 2019). On remand, Appellant filed a pro se amendment to his PCRA petition, which the PCRA court apparently accepted. The court ordered the Commonwealth to file a response, and the Commonwealth did so on April 15, 2019. On May 24, 2019, the court again issued an order dismissing Appellant's petition without a hearing.[1]

Appellant filed a timely, pro se notice of appeal. The PCRA court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On July 18, 2019, the PCRA court filed a Rule 1925(a) opinion stating that Appellant had not complied with its order to file a concise statement, and concluding that his issues were waived. Appellant filed a pro se petition with

_____

[1] Notably, the court again failed to provide Appellant with a Rule 907 notice of its intent to dismiss his petition without a hearing, and an opportunity to respond thereto. However, Appellant has not objected to the court's error in this regard, thus waiving that claim for our review. See Commonwealth v. Taylor, 65 A.3d 462, 468 (Pa. Super. 2013) ("The failure to challenge the absence of a Rule 907 notice constitutes waiver.") (citation omitted).

- 4 -

this Court, claiming that he had attempted to file a Rule 1925(b) statement, but that it had been returned to him unfiled for some unknown reason. On August 14, 2019, we issued a per curiam order remanding Appellant's case for him to file a concise statement, and for the court to issue an opinion. Appellant complied with our order, and the court filed its Rule 1925(a) opinion on October 16, 2019.

We now review the following issues raised in Appellant's pro se brief:

I. Whether the PCRA [c]ourt erred in failing to find trial counsel ineffective in violation of Appellant's right to due process and effective assistance under the Sixth and Fourteenth Amendment to the U.S. Constitution and Article I, Section 9 of the PA Constitution on the basis that trial counsel interfered with Appellant's fundamental right to testify on one[']s own behalf by giving specific advice so unreasonable as to vitiate a knowing and intelligent decision by Appellant not to testify on his own behalf?

II. Whether the PCRA Court erred in failing to find trial counsel ineffective in violation of Appellant's right to due process and effective assistance under the Sixth and Fourteenth Amendment to the U.S. Constitution and Article I, Section 9 of the PA Constitution on the basis that trial counsel failed to perform due diligence and conduct an independent, professionally reasonable investigation of the jail telephone recordings himself, prior to offering Appellant advice about their admissibility?

III. Whether the PCRA Court erred in failing to find trial counsel ineffefctive [sic] in violation of Appellant's right to due process and effective assistance under the Sixth and Fourteenth Amendment to the U.S. Constitution and Article I, Section 9 of the PA Constitution on the basis that trial counsel failed to call material witnesses, whom were present in the courtroom, and whom would [have] offered exculpatory testimony[] on Appellant's behalf?

IV. Whether the PCRA Court erred in failing to find trial counsel ineffective in violation of Appellant's right to due process and effective assistance under the Sixth and Fourteenth Amendment to the U.S. Constitution and Article I, Section 9 of the PA Constitution on the basis that trial counsel failed to object, or act

in any way, to prevent and protect Appellant from the DA's "ambush" tactics that were employed to keep Appellant and his two most material witnesses from testifying?

V. Whether the PCRA Court erred and violated paragraph (1) of Pa.R.Crim.P. Rule 907 by summarily dismissing the petition without a hearing where there was a genuine issue of material fact in claims I-IV raised by Appellant?

Appellant's Brief at 5-6.

First, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." Commonwealth v. Morales, 701 A.2d 516, 520 (Pa. 1997) (citing Commonwealth v. Travaglia, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ... [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

Commonwealth v. Johnson, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Appellant's issues are all interrelated, and stem from his trial counsel's response to the Commonwealth's disclosure of an allegedly damaging recording of a prison phone call made by Appellant (hereinafter "the recording"). By way of background, after the Commonwealth rested its case on the afternoon of the final day of trial, the court began to voir dire Appellant about his right to testify on his own behalf. Initially, Appellant informed the court that, after consulting with counsel, he had decided that he wanted to testify. N.T. Trial, 10/21/13-10/23/13, at 147. The court then recessed for approximately 20 minutes for Appellant to further discuss his decision with his counsel. Id. at 149. When the trial resumed, Appellant was again asked by the court if he wished to testify. Id. The following exchange took place:

THE COURT: And what is [your] decision?

[Appellant]: I will not be testifying.

THE COURT: All right. And now you've changed your mind on that? You indicated to me at sidebar that you did wish to testify.

[Appellant]: Yes, ma'am.

THE COURT: And [trial counsel] has taken some time to discuss with you again your rights. You understand those rights?

[Appellant]: Yes, ma'am.

THE COURT: And he's also discussed with you your trial strategy? You have been present in the courtroom, you've heard the other testimony, and you've considered his advice; is that true?

[Trial Counsel]: You've considered my advice?

[Appellant]: I mean, with respect to the information that I just received --

THE COURT: From [trial counsel]?

[Appellant]: Yes, ma'am. I -- I mean,

THE COURT: I guess, so, basically my guess here -- and correct me if I'm wrong -- is that they, the Commonwealth, had informed your attorney that if you do testify, they would request to impeach you with a prior record that would involve crimen falsi?

[Trial Counsel]: Prior records involving crimen falsi. There's also jail tapes from last night --

THE COURT: From last night?

[The Commonwealth]: Yes, Your Honor.

[Trial Counsel]: -- that I think, even though I would vigorously object, I feel like they'd probably be admitted.

THE COURT: Okay. So --

[Appellant]: After discussing that, it's my understanding, after discussing that, I mean, that -- that heavily influenced my decision, and I feel like it's not in my best interest if these tapes are going to be introduced, if that's the extent.

THE COURT: Okay. So, has anybody forced, threatened, or coerced you with regard to your decision not to testify?

[Appellant]: I mean, that is kind of like -- I mean, I want to testify, but it's -- it's to the point, I mean, it's --

THE COURT: Well, it's your decision. You can testify.

[Appellant]: Yes, ma'am.

THE COURT: You understand what the risks of doing so are?

[Appellant]: Yes, ma'am.

THE COURT: And that you would be subject to cross-examination?

[Appellant]: Yes, ma'am.

THE COURT: That that cross-examination may place before the jury your criminal record or some part of it?

[Appellant]: Yes, ma'am.

THE COURT: And [cross-examination] also may place before the jury taped phone conversations from the jail?

[Appellant]: Yes, ma'am.

THE COURT: And given that information --

[Appellant]: I decided it's not in my best interest to take the stand.

THE COURT: And that's your decision?

[Appellant]: Yes, ma'am.

THE COURT: And nobody has forced, threatened, or coerced you?

[Appellant]: Oh, no, ma'am.

THE COURT: So this is your decision, having considered all of this information and [trial counsel's] advice, but it is your decision, not his?

[Appellant]: Yes, ma'am.

Id. at 150-52 (emphasis added).

Appellant now claims that during the recess, the prosecutor approached the defense and

[s]tated that he was in possession of [the] recording[] where Appellant could be heard instructing a defense witness how to testify, essentially encouraging that witness to fabricate their testimony and perjure themselves. [The prosecutor] further stated that Appellant made incriminating statements during [the recording] and [it] would play the [recording] for the jury if Appellant went forward with his decision to testify[,] or if he called any of the remaining witnesses that the defense had planned on calling, namely Melody Carter-Frye or Ujamaa T. Walker. Appellant vehemently denied engaging in such a call to trial counsel and further informed him that he had not spoken to either of the witnesses the day prior. Appellant requested to be permitted to listen to the recordings in question and asked trial counsel if he had reviewed the tapes himself[,] to which [counsel] replied[,] "There's no time. I just learned of these recordings at the same time that you did. Why don't you just not take the stand

and we won't have to worry about these tapes." Appellant again reiterated to counsel that he had not engaged in such a call and informed him that the sole call that he did make on the day prior was to a friend, who[] had no interest in the case, and there was absolutely nothing incriminating in the dialogue during that conversation, nor was there any request made for anyone to "perjure themselves" as purposed by [the prosecutor]. Appellant explained to counsel that he had vented to this friend his disapproval for the juror who[] had been selected to sit on his jury.... Appellant admitted to counsel that he had used some profanity and derogatory language when expressing himself, but he was certain that he did not say anything "incriminating" during the call['s] duration. Counsel responded by telling Appellant[,] "Well [the prosecutor] is claiming that your [sic] on the tape saying these things and the [c]ourt will allow him to play the [recording] for the jury[,] I'm sure of it."

Appellant's Brief at 11-12.

Appellant claims that counsel acted ineffectively in several ways in responding to the Commonwealth's disclosure of the recording. For instance, he contends that counsel erred by not objecting to the fact that the Commonwealth waited until the afternoon of his final day of trial to reveal its possession of that evidence, rather than informing the defense immediately when trial commenced that morning.

Appellant also claims that counsel was ineffective for not asking to listen to the recording to determine its potential admissibility before advising Appellant not to testify because the recording could be admitted if he did. Appellant maintains that counsel was wrong to presume the admissibility of the recording because, if it contained what the Commonwealth claimed, then the recording was not of Appellant. Id. at 25. Alternatively, if the recording was of Appellant's only phone conversation with his uninvolved friend, then

that conversation would not have been admissible under Pa.R.E. 403 because Appellant's "making derogatory remarks about an impaneled juror [was] not only irrelevant, but would [have] be[en] of the highest prejudicial value." Id. at 16. Under either scenario, Appellant insists that his counsel was ineffective for not investigating the recording and determining its admissibility before convincing Appellant to waive his right to testify, when Appellant clearly wanted to testify before the Commonwealth revealed the recording.

Appellant also contends that his trial counsel acted ineffectively because he premised his decision not to call Melody Carter-Frye and Ujamaa T. Walker on the presumed admissibility of the recording without investigating it further. According to Appellant,

> [b]oth of these witnesses were present, ready and willing to testify on the first and second day of Appellant's trial. Then came the 11th hour, oral disclosure of the recording[] by the Commonwealth, … coupled with the threat to play the recording[] for the jury if counsel decided to call Appellant or either of these two witnesses to the stand to testify. Both of these witnesses, and also Appellant, made counsel aware of the fact that they had not spoken to Appellant on the previous day as [the prosecutor] purported. (See Appendix E and D, "Witness Affidavits")[.]

Appellant's Brief at 32-33. Appellant claims that counsel erroneously decided not to call Carter-Frye or Walker to the stand because of the possibility that the recording could be admitted during their cross-examinations. Appellant insists that he was prejudiced by counsel's decision because "both of these witnesses woud[ have] offered exculpatory testimony had they been called to testify." Id. at 33 (citing Appendix D and E, "Witness Affidavits").

Finally, Appellant argues that the PCRA court erred by not conducting an evidentiary hearing to permit him to introduce evidence to further support these ineffectiveness claims.

We agree with Appellant that the PCRA court abused its discretion in dismissing his petition without a hearing. First, in rejecting Appellant's claim that counsel was ineffective for advising him not to testify based on the recording, the court relied on the fact that the prosecutor "informed [trial] counsel that Appellant could be heard on the recordings instructing a defense witness how to testify and encouraging that witness to fabricate testimony." PCRA Court Opinion (PCO), 10/15/19, at 3-4 (citing PCRA Counsel's "No-Merit Letter," 11/17/17, at 11). The PCRA court reasoned that the recording would have been admissible as an admission by a party-opponent, which is an exception to the rule precluding hearsay evidence. See id. at 4 (citing Pa.R.E. 803(25)(a)). Thus, the court concluded that "trial counsel had a reasonable basis in advising Appellant not to testify" because "the recorded statements may have been deemed relevant to impeach his credibility." Id.

The PCRA court's determination is not supported by the record. Importantly, nothing in the record indicates what was actually on the recording, or even what the prosecutor told trial counsel was on the recording. Moreover, the court provided no analysis of Appellant's claim that his counsel acted ineffectively by simply accepting what the prosecutor said the recording contained, rather than asking to listen to the recording before advising Appellant about its potential admissibility if he took the stand.

- 12 -

We also find no support in the record for the court's dismissal of Appellant's claim that counsel ineffectively failed to call Carter-Frye and/or Walker based on the recording. The court reasoned that "trial counsel interviewed two of the witnesses, Appellant's family members, each of whom failed to corroborate Appellant's version of events. Appellant's sister[, Carter-Frye,] had no direct knowledge of any relevant facts while his brother's[, Walker,] testimony would have contradicted … Appellant's." Id. at 5. In support of this determination, the court cited prior PCRA counsel's 'no-merit letter,' in which PCRA counsel seemingly described a conversation he had with trial counsel regarding trial counsel's rationale for not calling these witnesses. However, nothing in the record indicates the basis for trial counsel's decision not to call Carter-Frye and/or Walker to the stand. Accordingly, the PCRA court erred by relying on PCRA counsel's apparently off-the-record conversation with trial counsel to conclude that trial counsel had a reasonable basis for not presenting the testimony of the at-issue witnesses.

Finally, the record does not support the PCRA court's conclusion that trial counsel acted properly in not objecting to the timeliness of the Commonwealth's disclosure of the evidence because the Commonwealth informed counsel about the recording and its substance "as soon as trial counsel arrived at court" on the morning of the final day of trial. Id. at 5. The PCRA court cites no portion of the record to support this statement. As Appellant points out, the recess during which he claims to have first been informed about the recording took place from 2:14 p.m. until 2:35 p.m., not

first thing in the morning as the PCRA court claims. See N.T. Trial at 149; see also Appellant's Brief at 40.

Given this record, we agree with Appellant that an evidentiary hearing is required. Questions of material fact clearly exist regarding when the Commonwealth first informed the defense about the recording; what the Commonwealth told Appellant and his counsel about that evidence; what counsel advised Appellant regarding the potential admissibility of the recording; why counsel did not request to listen to the recording before presuming its admissibility; and whether counsel's decision not to call Carter-Frye and Walker was premised on the possible admission of the recording. Without further evidence on these questions, and credibility determinations by the PCRA court, we cannot assess the reasonableness of trial counsel's actions after the Commonwealth revealed the existence of the recording.

Accordingly, we vacate the court's order dismissing Appellant's petition. We remand for the court to appoint Appellant counsel, and to conduct an evidentiary hearing on his ineffectiveness claims. See Pa.R.Crim.P. 908(C) ("The judge shall permit the defendant to appear in person at the hearing and shall provide the defendant an opportunity to have counsel.").

Order vacated. Case remanded for further proceedings. Superior Court's Prothonotary shall return the record to the PCRA court. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2020