J-S16011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHELTON THOMAS | : | |
| | : | |
| Appellant | : | No. 1510 EDA 2020 |

Appeal from the PCRA Order Entered July 7, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002707-2014

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 07, 2021**

Appellant, Shelton Thomas, appeals *pro se* from the post-conviction court's order denying his timely petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. On appeal, Appellant avers that his trial counsel acted ineffectively, and that the PCRA court erred by denying his petition without an evidentiary hearing. After careful review, we affirm.

The Commonwealth aptly summarized the facts and procedural history of Appellant's case, as follows:

> [Appellant] swindled $95,000 out of an elderly man, Raymond Campbell, by impersonating the District Attorney of Philadelphia and other officials. [Appellant] and Mr. Campbell lived in the same Philadelphia neighborhood, and Mr. Campbell paid [Appellant] … to cut his grass. In June 2011, [Appellant] falsely told Mr. Campbell, then 90 [years old], that he had been charged with illegal dumping for tossing grass clippings into a dumpster across the street. [Appellant] told Mr. Campbell that this fabricated violation obligated him to pay fines and court costs and asked Mr.

---

[*] Former Justice specially assigned to the Superior Court.

Campbell to reimburse him. Mr. Campbell, feeling responsible since the grass clippings came from his yard, obliged. N.T.[,] 2/12/15, [at] 4–6; [N.T.,] 6/22/15, [at] 11–12, 14.

From June 2011 to February 2014, [Appellant] repeatedly asked Mr. Campbell for money to cover court fees and other costs that all supposedly arose from this single instance of illegal dumping. [Appellant] would call Mr. Campbell, pretend to be a local official—frequently R. Seth Williams, the District Attorney of Philadelphia at the time—and ask for money. [Appellant] then called Mr. Campbell as himself and arranged to pick up the money on the porch of Mr. Campbell's house, purportedly on behalf of who[m]ever he pretended to be on the preceding phone call. [Appellant] called Mr. Campbell one to two times per week. Mr. Campbell would awake at 5:30 a.m. to take a train to an ATM to withdraw the necessary cash. [Appellant] conned a total of approximately $95,000 from Mr. Campbell over a nearly three-year period. Mr. Campbell liquidated his retirement account and maxed out cash advances on three credit cards to meet [Appellant]'s requests. N.T.[,] 2/12/15, [at] 4–6;[N.T.,] 6/22/15, [at] 12–13, 14–16.

[Appellant's] scheme came to an end in February 2014, after Mr. Campbell's nephew realized what [Appellant] was doing and contacted police. Officers arrested [Appellant] and interviewed him. [Appellant] confessed to making up the illegal dumping violation, to using it to manipulate Mr. Campbell into giving him cash, and to repeatedly impersonating public officials on phone calls to perpetrate the scam. N.T.[,] 3/7/14, [at] 21–34; [N.T.,] 6/22/15, [at] 34–35.

On March 7, 2014, the Municipal Court of Philadelphia held a preliminary hearing for [Appellant]. Mr. Campbell testified, explaining how [Appellant] defrauded him. The officer who interviewed [Appellant] read [Appellant's] confession to the court. With respect to the criminal trespass charge, the court ruled that the Commonwealth had made out a *prima facie* case of criminal trespass because the evidence showed that [Appellant] entered Mr. Campbell's porch under false pretenses and, thus, through

"subterfuge." *See* 18 Pa.C.S. § 3503(a)(1)(i);[1] N.T.[,] 3/7/14, [at] 4–19, 21–34, 38–39, 43.

On February 12, 2015, [Appellant] [pled] guilty to criminal trespass, theft by deception, theft by extortion, identity theft, and impersonating a public servant. At the hearing's outset, [the trial court] confirmed with [Appellant] that he had finished high school, that he could read, write, and understand English, that he was not under the influence of drugs or alcohol, and that he was satisfied with his attorney. After a summary of the facts describing [Appellant's] criminal conduct, [Appellant] entered his non-negotiated plea. The court also granted [Appellant's] request to speak. N.T.[,] 2/12/15, [at] 3–6. [Appellant] said, "I would like to apologize for what I have done. [Mr. Campbell] was like a grandfather to me. There wasn't no reason for me to act that way to him." *Id.* at 6–7.

[Appellant] also signed a written guilty plea colloquy. In it, he hand[-]wrote the charges to which he [was] plead[ing] guilty, the maximum prison sentence of 16[½] to 33 years[' incarceration] he faced, and the fact he entered an open guilty plea. By signing the written colloquy, [Appellant] represented that he [was] plead[ing] guilty willingly and voluntarily, that his counsel provided him satisfactory representation, and that he understood he was sacrificing various rights and defenses by pleading guilty— including having a trial in which he would have the opportunity to present evidence. *Id.* at 1–3. On the final page, [Appellant]'s trial counsel certified that [Appellant] had read the written colloquy and understood it. *Id.* at 4.

Four months later, the trial court held [Appellant's] sentencing hearing. Mr. Campbell testified again. He described [Appellant's] fraudulent scheme, the amount of money he lost, the difficulty of repeatedly awaking early in the morning to reach an ATM, and the

---

[1] Section 3503(a)(1)(i) defines criminal trespass as follows: "A person commits an offense if, knowing that he is not licensed or privileged to do so, he … enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof…." 18 Pa.C.S. § 3503(a)(1)(i). While the word "subterfuge" is not explicitly defined by the statute, Merriam-Webster Dictionary defines it as "a deception by artifice or stratagem in order to conceal, escape, or evade[.]" Merriam-Webster, http://merriam-webster.com (last visited June 8, 2021).

ongoing fear of legal consequences and financial ruin. [Appellant] elected to exercise his right of allocution. He apologized to Mr. Campbell, to Mr. Campbell's nephews, and to [former] D.A. Williams. N.T.[,] 6/22/15, [at] 8–16, 26–27, 29. He stated that his con of Mr. Campbell "just got too deep. And then, when I realized what was happening to me, I said, 'No, this got to stop.' … I know I have to pay the consequence for what I did." *Id.* at 32.

The trial court sentenced [Appellant] to the maximum aggregate prison term of [16½] to [33] years[' incarceration]. [Appellant] filed a timely post-sentence motion asking the trial court to reconsider his sentence, which the trial court denied. [Appellant] appealed[, challenging the discretionary aspects of his sentence,] and this Court affirmed on December 30, 2016. ***Commonwealth v. Thomas***, 159 A.3d 1018 (Pa. Super. 2016) ([unpublished memorandum]).

[Appellant] filed a *pro se* PCRA petition on November 6, 2017, and then filed an amended petition, also *pro se*, on July 6, 2018. In the amended petition, [Appellant] listed four issues, all claiming trial counsel was ineffective for inducing him to plead guilty, and requested an evidentiary hearing. Amended *Pro Se* Petition, [7/6/18,] at 3, 6–7. [Appellant] did not include an affidavit from trial counsel, evidence of his efforts to contact trial counsel, or any other evidence supporting his claim. He identified only Mr. Campbell as a potential witness, alleging that Mr. Campbell would exonerate him by testifying that he expected [Appellant's] visits to his house to pick up the cash. *Id.* at 2–3. As [Appellant] noted, *id.* at 2, Mr. Campbell relayed this fact at both the preliminary hearing and sentencing. *See* N.T.[,] 3/7/14, [at] 8–9, 11–12; [N.T.,] 6/22/15, [at] 14–15. [Appellant] now appears to consider this evidence to undermine all of his convictions, but in his initial *pro se* petition, he mentioned it in regard to criminal trespass only. *See Pro Se* Petition, [11/6/17,] at 7.

[Appellant] received appointed PCRA counsel who subsequently filed a "no merit" letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988). PCRA counsel noted that she requested[,] but never received[,] documentation supporting [Appellant's] claim. The PCRA court issued two notices of intent to dismiss the petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. [Appellant] did not respond to either notice. The PCRA court formally dismissed [Appellant]'s

PCRA petition on July 6, 2020, and granted PCRA counsel's motion to withdraw. This appeal, taken by [Appellant] *pro se*, followed.

Commonwealth's Brief at 2-7 (parentheses and some citations to the record omitted).

Appellant timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court filed its Rule 1925(a) opinion on October 2, 2020. Herein, Appellant states three issues for our review:

A. Whether Appellant's [g]uilty [p]lea was involuntary, unknowing[,] and unintelligent because it was induced by trial counsel over and [*sic*] existing record of bold, exculpatory evidence of [A]ppellant's actual innocence?

B. Whether the PCRA [c]ourt erred by denying relief based upon the assertion that trial counsel was ineffective for failing to properly investigate the case, [and] in failing to interview [a] potential exculpatory alibi witness?

C. Whether the PCRA [c]ourt erred in dismissing Appellant's PCRA petition without holding an evidentiary hearing to determine whether trial counsel was ineffective?

Appellant's Brief at 3.

First, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Appellant's first two issues are related and will be addressed together. Appellant contends that his trial counsel failed to adequately investigate his case before advising him to plead guilty. Specifically, he avers that counsel ineffectively failed to interview the victim, Mr. Campbell. Appellant claims that Mr. Campbell would have been "willing to offer truthful testimony that he (Mr. Campbell) was …. aware that Appellant was coming to visit him[,] and that Appellant had not committed a crime on his ([Mr. Campbell's]) property…." Appellant's Brief at 11. Appellant argues that Mr. Campbell's potential testimony constituted "bold, exculpatory evidence of Appellant's actual innocence." *Id.* at 12. He insists that, had counsel interviewed Mr. Campbell and advised Appellant "regarding defenses that [were] available" based on

Mr. Campbell's testimony, "Appellant would never have plead [*sic*] guilty to the offenses for which he was wrongly accused…." ***Id.*** at 14. Therefore, Appellant concludes that his counsel's ineffective assistance caused him to enter a guilty plea that was involuntary, unknowing, and unintelligent.

Appellant's claim lacks arguable merit. Initially, Appellant does not discuss how Mr. Campbell's proposed testimony would have exonerated him of any of the charges he faced. According to the Commonwealth, "Mr. Campbell had no exculpatory evidence to offer." Commonwealth's Brief at 13. It explains:

> As the complaining witness and victim of [Appellant's] crimes, Mr. Campbell offered highly incriminating testimony at [Appellant's] preliminary hearing and sentencing by detailing how [Appellant] defrauded him. N.T.[,] 3/7/14, [at] 4–20; [N.T.,] 6/22/15, [at] 8–16. Mr. Campbell's statement that he consented to [Appellant's] visiting him at his home when [Appellant] came to pick up the fruits of his fraud does not alter [Appellant's] legal jeopardy in any respect. It is irrelevant to most of his convictions. And, as the [m]unicipal [c]ourt … explained, [Appellant] could still be guilty of criminal trespass by unlawfully entering Mr. Campbell's property through false pretenses, constituting trespass by "subterfuge." N.T.[,] 3/7/14, [at] 38–39; ***see*** 18 Pa.C.S. § 3503(a)(1)(i). Since Mr. Campbell's testimony did not exculpate [Appellant], and in light of [Appellant's] comprehensive confession to police, trial counsel was not ineffective for encouraging [Appellant] not to waste the trial court's time with a meritless defense. ***See Commonwealth v. Robinson***, 82 A.3d 998, 1005 (Pa. 2013) ("[C]ounsel obviously cannot be deemed ineffective for failing to raise a meritless claim.").

Commonwealth's Brief at 13-14 (parentheses omitted).

We agree with the Commonwealth. Appellant gained entry into Mr. Campbell's home by subterfuge, as Appellant deceived Mr. Campbell into

- 7 -

believing he was there to pick up money to pay legal costs that Appellant had wholly fabricated. Accordingly, Appellant did not have a valid defense to criminal trespass, or any of his other offenses, based on Mr. Campbell's prospective testimony. Thus, counsel did not act ineffectively by failing to advise Appellant about this meritless defense before Appellant pled guilty.

In Appellant's third issue, he claims that the court erred by not conducting an evidentiary hearing in this case. Appellant argues that without a hearing, the court could not determine what specific advice his counsel provided him about the plea, how much time counsel spent consulting with Appellant, and "whether the alleged exculpatory witness[, *i.e.*, Mr. Campbell,] was available and willing to testify on Appellant's behalf." Appellant's Brief at 16.

For the reasons set forth *supra*, it is obvious that Mr. Campbell's testimony would not have exonerated Appellant and, therefore, counsel was not ineffective for failing to pursue this meritless defense. Consequently, a hearing was not warranted to discern if Mr. Campbell would have been willing and able to testify on Appellant's behalf. Moreover, Appellant does not specifically identify what other allegedly ineffective advice his counsel gave him about his plea, or how the time counsel spent with him was inadequate. Accordingly, he has failed to "show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Commonwealth***

***v. Maddrey***, 205 A.3d 323, 328 (Pa. Super. 2019) (quoting ***Commonwealth***

***v. Hannible***, 30 A.3d 426, 452 (Pa. 2011)).

 Order affirmed.


*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 7/7/2021*