J-S33005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMELL RASHAAD JACKSON | : | |
| | : | |
| Appellant | : | No. 110 WDA 2023 |

Appeal from the PCRA Order Entered December 28, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000599-2019

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED: NOVEMBER 30, 2023**

Appellant, Jamell Rashaad Jackson, appeals from the post-conviction court's December 28, 2022 order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant raises a single claim of trial counsel ineffectiveness based on counsel's failure to file a motion to suppress.  After careful review, we affirm.

This Court previously summarized the facts and procedural history of Appellant's underlying convictions, as follows:

> Appellant lived, on and off, with his uncle, Julius Jackson, and Mr. Jackson's Cane Corso dog, in Mr. Jackson's home.  On December 3, 2018, Appellant shot Mr. Jackson[] in the foot with a firearm that Appellant had taken from Mr. Jackson's home.
>
> While at the hospital just after the shooting, Mr. Jackson told Erie Police Officers Michael Attalla and Melanie Szoszorek that Appellant shot Mr. Jackson because of a dispute over unpaid rent.

---

[*] Former Justice specially assigned to the Superior Court.

Mr. Jackson, appearing calm, coherent, and not heavily intoxicated, described the specific details of the event and gave a written statement consistent with his oral account. Mr. Jackson definitively identified Appellant as the shooter. Upon returning to Mr. Jackson's home later that same night, Officer Szoszorek recovered, consistent with Mr. Jackson's statement, a bloody shirt and a bloody sock with a bullet hole.[1] Officer Szoszorek did not find a firearm at that time.

Detective Patrick Grinkel continued the investigation of the incident. He met with Mr. Jackson two days after the shooting at Mr. Jackson's home. Mr. Jackson gave Detective Grinkel a statement essentially identical to the written and oral statements he had given to Officers Attalla and Szoszorek two days earlier. When speaking with Detective Grinkel, Mr. Jackson was calm, coherent, and pleasant, and expressed no doubt that it was Appellant who shot him.

Mr. Jackson also gave Detective Grinkel a plastic bag containing Mr. Jackson's gun, which Mr. Jackson stated that he had found on the porch of his home sometime after the incident. A DNA sample collected from this firearm matched Appellant's DNA.[2] Detective Grinkel discovered, under the stairs in Mr. Jackson's kitchen, a spent .9 mm bullet, later revealed to have come from Mr. Jackson's firearm. Detective Ginkel's [sic] subsequent investigation revealed that Appellant did not have a license to possess a firearm.

On March 20, 2019, the Commonwealth charged Appellant with [persons not to possess a firearm, possession of an instrument of crime ("PIC"), and aggravated assault with a deadly weapon, a second-degree felony,3] and other related[] offenses arising from the December 3, 2018 shooting.

In the days preceding Appellant's jury trial, the Commonwealth issued a subpoena compelling Mr. Jackson to appear at the District Attorney's Office. Mr. Jackson did not appear. Instead, on November 4, 2019, he and his sister visited Cheryl Kita, a notary,

---

[1] As will be discussed further, *infra*, police entered Mr. Jackson's home after receiving his consent, via telephone, to do so.

[2] Appellant's DNA sample was collected pursuant to a search warrant.

[3] 18 Pa.C.S. §§ 6105(a)(1), 907(a), and 2702(a)(4), respectively.

where Mr. Jackson signed a notarized statement that Appellant was not responsible for the shooting.

Appellant's trial commenced on November 7, 2019. The Commonwealth presented the testimony of numerous witnesses, including Mr. Jackson, and established the above facts. Relevantly, and contrary to the statements he had given to police and investigators, at trial, Mr. Jackson testified that he was intoxicated at the time of the incident, that the incident was "a blur," and that he could not identify the person who shot him. N.T. Trial, 11/7/19, at 34, 37, 43-44. However, the Commonwealth did read aloud the written statement Mr. Jackson had given to police and Mr. Jackson confirmed that he and Appellant had gotten into an argument, which caused Mr. Jackson's dog to attempt to attack Appellant. *Id.* at 41-43. Appellant "was waiving [Mr. Jackson's] gun … and the gun went off and shot [Mr. Jackson's] foot." *Id.* Mr. Jackson also testified that he did not give Appellant permission to have his firearm. *Id.* at 80-81.

*Commonwealth v. Jackson*, No. 373 WDA 2020, unpublished memorandum at *1-4 (Pa. Super. filed Mar. 19, 2021).

Based on this evidence, the jury convicted Appellant of the above-stated charges. On January 20, 2020, the court sentenced him to an aggregate term of five to ten years' incarceration, followed by one year of probation. He filed a timely notice of appeal and, after this Court affirmed, *see id.*, our Supreme Court denied Appellant's subsequent petition for allowance of appeal. *See Commonwealth v. Jackson*, 266 A.3d 447 (Pa. 2021).

Appellant filed a timely, *pro se* PCRA petition on August 29, 2022. Counsel was appointed and filed a supplemental PCRA petition, alleging that Appellant's trial counsel was ineffective for failing to file a motion to suppress. A hearing was held on December 20, 2022. On December 28, 2022, the court

issued an Opinion and Order setting forth the following, pertinent findings of fact:

14. At the PCRA hearing, [Appellant] testified that:

a. He asked Defense Attorney Jason Checque[, Esq.,] to file a suppression motion.

b. When asked by Attorney [Checque] why he wanted to file a suppression motion, [Appellant] replied, "Because there was insufficient evidence[."]

c. When asked by Attorney [Checque] what he wanted to suppress, [Appellant] replied, "Evidence seized from my Uncle's residence[."]

15. Attorney Checque testified at the hearing. He testified, and the [c]ourt finds credible, that:

a. Attorney Checque has been with the Public Defender's office for over 11 years, and practiced criminal law seven years before then.

b. Attorney Checque had several meetings with [Appellant].

c. [Appellant] asked him to file a suppression motion.

d. Attorney Checque didn't file a suppression motion, because in his opinion, such a motion "had no merit[."]

e. Attorney Checque believed the suppression motion had no merit because the Uncle was the resident and renter of the residence, and thus could give consent to search. Moreover, Attorney Checque knew that the Uncle had given a statement implicating [Appellant], and that the gun had been provided to the police by the Uncle.

f. Attorney Checque did not believe any evidence was seized from [Appellant's] bedroom.

g. Attorney Checque testified that he believed the only evidence seized at the home was a bloody sock and bloody t-shirt. (These items were seized in a common area).

h. Attorney Checque testified he did not believe the police did anything unconstitutional.

> i. At trial, [Appellant's] strategy was to argue someone else shot the Uncle, and the Uncle had incorrectly given his original statement implicating [Appellant], because he was intoxicated or mistaken.
>
> j. Attorney Checque testified he explained to [Appellant] that filing the meritless suppression motion would only delay the trial. He testified that he and [Appellant] wanted to go to trial as soon as possible because they knew that Uncle would recant his earlier statement about the [Appellant's] being the shooter.

PCRA Court Opinion and Order (PCOO), 12/28/22, at 2-3.

Based on these facts, the PCRA court concluded that Attorney Checque was not ineffective for reasons we discuss *infra*. Thus, it denied Appellant's petition. He filed a timely notice of appeal and complied with the PCRA court's subsequent order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court thereafter issued a Rule 1925(a) opinion indicating it was relying on the rationale set forth in its December 28, 2022 Opinion and Order to support its denial of Appellant's petition.

Herein, Appellant states a single issue for our review:

> A. Whether the [PCRA] court committed legal error and abused its discretion in failing to grant PCRA relief based upon the ineffectiveness of defense counsel in declining to comply with Appellant's directive to file a suppression motion in regard to the police entry and search of the residence wherein … Appellant was living and where he had a possessory interest and expectation of privacy?

Appellant's Brief at 2 (unnecessary capitalization omitted).

"This Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of

legal error." ***Commonwealth v. Morales***, 701 A.2d 516, 520 (Pa. 1997)

(citing ***Commonwealth v. Travaglia***, 661 A.2d 352, 356 n.4 (Pa. 1995)).

Where, as here, a petitioner claims that he or she received ineffective

assistance of counsel, our Supreme Court has directed that the following

standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [***Commonwealth v.***] ***Colavita***, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing ***Strickland*** [***v. Washington***, 466 U.S. 668 … (1984)]). In Pennsylvania, we have refined the ***Strickland*** performance and prejudice test into a three-part inquiry. ***See*** [***Commonwealth v.***] ***Pierce***, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. ***Commonwealth v. Ali***, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." ***Commonwealth v. Simpson***, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. ***See Ali***, ***supra.*** Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Colavita***, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." ***Commonwealth v. King***, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation

marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, … 10 A.3d at 291 (quoting **Commonwealth v. Collins**, … 957 A.2d 237, 244 ([Pa.] 2008) (citing **Strickland**, 466 U.S. at 694…)).

**Commonwealth v. Spotz**, 84 A.3d 294, 311-12 (Pa. 2014).

Here, Appellant claims that Attorney Checque was ineffective for not filing a motion to suppress the evidence seized from Mr. Jackson's residence. According to Appellant, there were various challenges to the validity of Mr. Jackson's consent that could have been argued by counsel, including the fact that Mr. Jackson was intoxicated and "undergoing medical treatment for a painful foot wound" when that consent was purportedly given; the police never obtained any formal, written consent from Mr. Jackson; and Mr. Jackson "conveyed his consent via telephone" and allegedly through a third-party. Appellant's Brief at 9, 10. Appellant claims that these circumstances rendered Mr. Jackson's consent to search "suspect." **Id.** at 10.

Appellant further insists that he was prejudiced by the purportedly illegal search because the items seized — a bloody sock and bloody t-shirt belonging to Mr. Jackson — were later used to obtain the warrant for Appellant's DNA, which was then used to tie him to the gun that shot Mr. Jackson. Appellant avers that

> [i]f the initial evidence secured from the warrantless search predicated on consent [had been] exclud[ed,] then the DNA evidence [would have] also be[en] subject to exclusion. In the absence of that totality of evidence, the Commonwealth['s] case[,] which already rested on a recalcitrant and uncooperative victim, namely Julius

Jackson, would [have] be[en] baseless and unlikely to even
have proceeded to trial.

*Id.* at 11. Thus, Appellant concludes that Attorney Checque was ineffective for not filing a motion to suppress.

We are unconvinced. Initially, the PCRA court clearly found credible the evidence that Mr. Jackson gave police his consent to search the residence. *See* PCOO at 4 (stating that Mr. Jackson, "who was the principal resident and renter of his property, gave his consent to search"). As we summarized on direct appeal, the testimony at trial by Officers Szoszorek and Attalla (which, presumably, would have mirrored any testimony offered by the officers at a suppression hearing) indicated that Mr. Jackson was coherent and not heavily intoxicated when he was in hospital and provided his consent to search the residence.[4] This testimony undercuts Appellant's argument that Mr. Jackson's consent could have been successfully challenged on the basis of his purported intoxication or incoherency.

Moreover, the only items recovered during the search were Mr. Jackson's bloody sock and bloody t-shirt. While Appellant insists that these

---

[4] *See* N.T. Trial, 11/7/19, at 102 (Officer Szoszorek's testifying Mr. Jackson was coherent and alert when officers spoke to him at the hospital); *id.* at 119 (Officer Szoszorek's testifying that she observed no indication of heavy intoxication in Mr. Jackson at the hospital); *id.* at 123 (Officer Attalla's testifying that, at the hospital, Mr. Jackson was coherent and not confused in any way); *id.* at 135 (Officer Attalla's testifying that he could hear Mr. Jackson on the phone call providing his consent to search the residence and Mr. Jackson did not express any confusion about what was happening); *id.* at 138 (Officer Attalla's testifying that Mr. Jackson appeared calm and sober when the officers were talking to him in the hospital).

items were vital in the probable cause to issue the warrant for his DNA sample, it is obvious that there was ample other evidence to establish probable cause to issue the warrant aside from those items. Namely, Mr. Jackson gave police written and oral statements naming Appellant as the shooter both on the day of the shooting, as well as two days later when he was home from the hospital. He also gave police the gun he claimed Appellant used to shoot him. Based on Mr. Jackson's statements to police and the gun he turned over to them, probable cause existed to issue a warrant for Appellant's DNA.

Thus, Appellant has not only failed to demonstrate that counsel had a valid basis to seek to suppress the items recovered from Mr. Jackson's home, given Mr. Jackson's consent to search, but he also has not established that suppressing the evidence recovered from that search would have changed the outcome of his case. For all these reasons, we discern no error in the PCRA court's denying Appellant's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/30/2023